Archie BEKKEDAHL, Plaintiff-Appellant,

v.

NORTH DAKOTA WORKMEN'S
COMPENSATION BUREAU,
Defendant-Appellee.

Civ. No. 9022.

Supreme Court of North Dakota.

Oct. 31, 1974.

Zuger & Bucklin, Bismarck, for plaintiff-appellant.

Leonell W. Fraase, Sp. Asst. Atty. Gen., and David Evans, Asst. Atty. Gen., Bis-

marck, for North Dakota Workmen's Compensation Bureau, defendant-appellee.

ERICKSTAD, Chief Justice.

On March 25, 1968, Archie Bekkedahl, whose residence is Williston, North Dakota, and who was employed by National Tank Company, a division of Combustion Engineering, Inc., with offices in Williston and whose home offices are in Tulsa, Oklahoma, was injured in Montana while unloading tank steel used in the oil fields.

Because of the seriousness of his injuries, Bekkedahl was transported to Fargo, North Dakota, where he received the attention of specialists.

Dr. Lee A. Christoferson, a neurosurgeon, in his dismissal summary listed Bekkedahl's final diagnosis as follows:

"Compound, comminuted, depressed skull fracture right parietal. Compression fracture T–10. Old healed fracture L–3. Fracture-dislocation left talus and severe ecchymosis left shoulder. Possible fracture right ribs."

Following surgery by the neurosurgeon for the head injuries, Bekkedahl was returned to Williston and almost immediately thereafter, only thirty days after the accident, he was given a Montana compensation claim form to sign without being informed of his right to file a claim with the North Dakota Workmen's Compensation Bureau and without being informed of the more favorable benefits available to him under the North Dakota Workmen's Compensation Act.

About eleven months after the accident, Bekkedahl filed an application with the North Dakota Workmen's Compensation Bureau. This application was denied on July 14, 1969, on the basis of Section 65–05–05, N.D.C.C.

It is significant that Bekkedahl's signature on the Montana claim form is almost illegible.

On June 29, 1971, Bekkedahl reapplied to the North Dakota Workmen's Compensation Bureau for compensation. The pertinent part of the application reads:

"I now with this application submit the following new materials to be considered by the Workmen's Compensation Bureau of the state of North Dakota, to wit:

"1. Original statement by the Industrial Accident Board of the state of Montana, indicating that any payments to me through the state of Montana were by mistake on the part of the state of Montana.

"2. My affidavit stating the reason why application was made to Montana instead of to North Dakota and indicating that the facts were such that I had coverage under the Workmen's Compensation Laws of the state of North Dakota.

"3. Progress report of physician, dated March 8, 1971, indicating that as a result of the accident, I can not carry out any sort of gainful employment as a laborer.

"I do not ask for any award from this state for prior to this application being determined in my favor or for any time in which I receive any compensation through the Industrial Accident Board of the state of Montana. I ask only for compensation from the Workmen's Compensation Bureau of the state of North Dakota for the future and for such periods of time as I do not receive compensation from the state of Montana.

"I hereby state and agree that following any award of compensation through the Workmen's Compensation Bureau of the state of North Dakota I will not accept any compensation paid by any other state for the injury."

By order dated August 24, 1971, the North Dakota Workmen's Compensation Bureau denied this application.

By findings of fact, conclusions of law, and order for judgment dated March 29, 1974, the district court affirmed the order of the Workmen's Compensation Bureau. It is from the judgment entered upon said order that Bekkedahl appeals to our court.

The statute upon which the Workmen's Compensation Bureau denied the claim reads:

"65–05–05. Payments made to insured employees injured in course of employment and to their dependents.—The bureau shall disburse the fund for the payment of compensation and other benefits as provided in this chapter to employees, or to their dependents in case death has ensued, who:

"1. Are subject to the provisions of this title;

"2. Are employed by employers who are subject to this title; and

"3. Have been injured in the course of their employment.

---

"Code
"65–0505. PAYMENTS MADE TO INSURED EMPLOYEES INJURED IN COURSE OF EMPLOYMENT AND TO THEIR DEPENDENTS.) The bureau shall disburse the fund for the payment of compensation and other benefits as provided in this chapter to employees, or to their dependents in case death has ensued, who:

\*   \*   ·   \*   \*   \*   \*

*Where the injury is sustained outside the state of North Dakota and compensation is claimed and received through some other state act no compensation shall be allowed under this title.*"
Report of the North Dakota Legislative Research Committee, Thirty-fourth Legislative Assembly, 1955, at 37.

*Where the injury is sustained outside the state of North Dakota and compensation is claimed and received through some other state act no compensation shall be allowed under this title.*" [Emphasis added.] North Dakota Century Code Prior to 1973 Amendments.

The Bureau contends that the part emphasized prohibits it from a jurisdictional standpoint from considering this claim. In support thereof it refers to the amendment to § 65–0505, N.D.R.C., and the note attached thereto contained in the Workmen's Compensation section of the report of the North Dakota Legislative Research Committee to the Thirty-fourth Legislative Assembly (1955). It reads:

"NOTE
"This proposed amendment is to prevent injured employees from filing in more than one state and receiving compensation from the various states, and also to compel the claimant to seek his remedy in one jurisdiction. It is virtually impossible to recover from the claimant any duplicate benefits paid and serves an injustice on the employers. Subsection 2 is amended to bring it into conformity with the proposed amendment to section 65–0427 [Now 65–04–27, N.D.C.C.]."

---

The Bureau specifically relies on that part of the note which states that it was the intent of the legislature by this proposed amendment, which incidentally became law in the 1955 Session of the Legislature, "to compel the claimant to seek his remedy in one jurisdiction."

In stressing this part of the note, the Bureau ignores the fact that it was the duplication of benefits that the Legislature was attempting to prevent and which was the evil that existed prior to the adoption of the amendment.

Relevant from a historical standpoint is a unanimous decision of the New Jersey Supreme Court rendered in 1963. Cramer v. State Concrete Corp., 39 N.J. 507, 189 A.2d 213 (1963).

In that case the New Jersey court stated the question to be whether an employee is barred from receiving Workmen's Compensation under their statute because he obtained an award against his employer in New York.

The contract of employment was made in New Jersey between parties who were and continued to be residents of New Jersey. The work was performed in New Jersey or New York, depending upon the location of the jobs the employer contracted to do. The accident giving rise to the claim occurred at a New York job site. The court upon these facts held that the employee became entitled to the benefits of the New Jersey Compensation Law, notwithstanding that New York, as the state in which the accident occurred, might also deem its compensation law to apply. The court cited Gotkin v. Weinberg, 2 N.J. 305, 66 A.2d 438 (1949), and other cases.

A part of the opinion in *Cramer* follows:

"The case turns upon the meaning of Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), and Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). The subject is fully explored in 2 Larson, Workmen's Compensation Law (1961) § 85, pp. 358 et seq. We will but summarize what there appears: state courts had generally assumed that successive awards could be had, subject to credit for moneys paid under the prior award, until Magnolia by a vote of 5 to 4 held the first award had to be given full faith and credit. Annotation, 150 A.L.R. 431 (1944). That case was quickly questioned by writers on the subject. Four years later McCartin was decided. It is now generally agreed that McCartin severely limited Magnolia by holding that the second state may enforce its own compensation law unless the law of the first state unmistakably provides that a judgment under it shall bar recovery in another state. Restatement, Conflict of Laws § 403 (1948 supp.); Goodrich, Conflict of Laws (3d ed. 1949) § 100,

p. 289; see also Yoshi Ogino v. Black, 278 App.Div. 146, 104 N.Y.S.2d 82, 86 (1st Dept. 1951), affirmed, 304 N.Y. 872, 109 N.E.2d 884 (Ct.App.1952).

"However, in Buccheri v. Montgomery Ward & Co., 19 N.J. 594, 118 A.2d 21 (1955), our court, by a vote of 4 to 3, concluded that Magnolia and McCartin were compatible. Holding the judgment obtained in New York must be deemed to bar recovery here unless the New York statute is 'obnoxious to the policy of our act' (p. 604, 118 A.2d p. 27), the majority found the acts were 'approximately alike in purpose and in the scope of the remedies and relief' (p. 605, 118 A.2d p. 27), and accordingly denied an award under our law.

"In Bowers v. American Bridge Co., 43 N.J.Super. 48, 127 A.2d 580 (App.Div. 1956), the Appellate Division observed that McCartin had generally been deemed to overrule Magnolia (p. 64, 127 A.2d p. 589), but of course it was obliged to comply with the opinion in Buccheri. Noting that the majority there said it was 'writing for this case and this case alone' (19 N.J., at p. 604, 118 A.2d at p. 27), the Appellate Division went to the question whether the prior award in Pennsylvania was 'obnoxious to the policy of our act' and found that it was, in part because of a disparity in the sums awarded. We affirmed on the opinion of the Appellate Division. 24 N.J. 390, 132 A.2d 28 (1957). Upon a like approach subsequent cases found the out-of-state judgment did not bar the employee's right to larger benefits under our law. Hudson v. Kingston Contracting Co., 58 N.J.Super. 455, 156 A.2d 491 (Cty.Ct.1959); Della Vecchia v. World Scope Publishing Co., 64 N.J.Super. 333, 165 A.2d 872 (Cty.Ct.1960).

"We are satisfied we should accept the view, now so widely held, that McCartin did in practical effect overrule Magnolia and that there is no constitutional barrier to a second proceeding here unless the law of the state of earlier award was unmistakably designed to bar relief under

the laws of another jurisdiction. The New York statute does not establish such exclusiveness and accordingly full faith and credit does not require us to deny the employee his rights under our law." Cramer v. State Concrete Corp., 39 N.J. 507, 189 A.2d 213 (1963).

On the specific issue of whether the claimant could recover from New Jersey, having already filed a claim and recovered from New York, the court said:

"As a matter of fairness the employee should receive 'the highest available amount of compensation' to which he is entitled, so long, of course, as credit is given for payments received. Boyle v. G. & K. Trucking Co., supra (37 N.J. [104], at p. 112, 179 A.2d [514] at p. 519). The problem doubtless arises because it is difficult to obtain advice with respect to the laws of all the states involved. It would be unjust to charge a workman with an 'election' or 'estoppel' because of an uninformed choice. Moreover, our State has a special interest in the enforcement of its own compensation plan, so much so that the parties cannot bargain away any part of the employee's scheduled benefits. R.S. 34:15–22 and 39 N.J.S.A.; Nagy v. Ford Motor Co., 6 N.J. 341, 78 A.2d 709 (1951); Gotkin v. Weinberg, supra (2 N.J. [305], at pp. 307–308, 66 A.2d at pp. 438, 439); Stroebel v. Jefferson Trucking & Rigging Co., 125 N.J.L. 484, 487, 15 A.2d 805 (E. & A.1940). In short the payment of anything less than the employee's full due is repugnant to the policy of our law. For these reasons we should not hold that an award elsewhere will deprive the employee of his right to benefits under our statute." Cramer v. State Concrete Corp., 39 N.J. 507, 189 A.2d 213 (1963).

It should be noted that New Jersey had no statutory provision such as the amended part of § 65–05–05, N.D.C.C. Notwithstanding that fact, however, we believe that *Cramer* is a valuable aid to us in determining the issue in the instant case because of what it says about the objective of the Compensation Act, what it says

about an uninformed choice, and how it concludes that payment of anything less than the employee's full due is repugnant to the policy of New Jersey law.

Had the differences in the benefits of the Workmen's Compensation Acts been disclosed to Bekkedahl at the time that he was asked to fill out the employee's claim form with the Industrial Accident Board of Montana, it is highly unlikely that he would have filed a claim with Montana.

Comparing § 65–05–09, N.D.C.C., providing for total disability benefits in effect in North Dakota at the date of the accident, with § 92–702 of the Revised Codes of Montana, we see that the first provided for weekly compensation equal to 80 percent of the claimant's weekly wage for the duration of the disability, subject to a maximum compensation of $53 per week, whereas the latter provided for a maximum compensation of 66⅔ percent of the weekly wages received by the claimant at the time of the injury, subject to a maximum compensation of $50 per week and further subject to a limitation in the duration of the payments of 500 weeks.

Had Mr. Bekkedahl been informed of the comparative merits of the two Workmen's Compensation statutes as they related to medical and hospital benefits, he would have noted that under § 65–05–07, N.D. C.C., he would have been entitled to medical and hospital services for the duration of his disability, whereas under § 92–706, Revised Codes of Montana, his medical and hospital benefits would have been limited to 36 months.

The pertinent parts of those statutes read:

"65–05–07. Injured employee given medical and hospital service required— Furnished artificial limbs and appliances for rehabilitation.—Immediately after an injury sustained by an employee and during the resulting period of disability, the fund shall furnish to the employee such medical, surgical, and hospital service and supplies as the nature of the injury may

require. If the injury causes permanent partial disability, the fund, in addition to the specific benefits provided, may furnish such artificial limbs, glasses, braces, equipment, or appliances or provide such course of study, training, or education as in the judgment of the bureau may be necessary to rehabilitate such injured employee." North Dakota Century Code.

"92–706. (2917) Medical and hospital services and such other treatment as approved by the board to be furnished. In addition to the compensation provided by this act and as an additional benefit separate and apart from compensation, the following shall be furnished:

"During the first thirty-six (36) months after the happening of the injury, the employer or insurer or the board, as the case may be, shall furnish reasonable services by a physician or surgeon, reasonable hospital services and medicines when needed, and such other treatment approved by the board, not exceeding in amount the sum of twenty-five hundred dollars ($2500.00) provided however, that in cases of total disability where apportionment of such sum does not meet all hospitalization expenses, the board may allow an additional amount for additional hospital and medical expenses as in special cases it may deem proper. The employer or insurer or the board shall not be required to furnish such services if the employee refuses to allow them to be furnished or if the employee is under hospital contract as provided in section 92–610.

"When such employee is under a hospital contract as above and when hospital and medical facilities or both are inadequate to the needs of an injured employee in a particular case such injured employee may, any time, be placed where adequate hospital facilities are obtainable, and the cost thereof in whole or in part shall be a legal charge against the one so contracting to furnish hospital facilities, and the amount of such charge and the necessity

therefor shall be determined by the board." Revised Codes of Montana (1947).

In light of the obvious differences in benefits existing at the time of the accident and the time when the claimant was required to file his claim, it would appear to us that had he been informed of these differences or had he knowledge of these differences, and had he known that he would have been permitted to file a claim with the North Dakota Workmen's Compensation Bureau, notwithstanding that his accident occurred in the state of Montana, his decision would have been to file a claim with the North Dakota Workmen's Compensation Bureau.

Considering the obvious differences in the Workmen's Compensation benefits of the states of Montana and North Dakota at the time the claimant's rights accrued, that these differences were not pointed out to the claimant nor known by him at the time he filed his claim with Montana, that the claimant had very recently undergone serious brain surgery and was still recuperating from that surgery as well as from his other injuries at the time he was asked to file the claim with the Industrial Accident Board of Montana, that the North Dakota Legislature intended by the 1955 Amendment to Section 65–05–05, N.D.C.C., to prevent duplicate benefits, and since allowing the claim in the instant case will not permit a duplication of benefits, we conclude that § 65–05–05, N.D.C.C., does not prevent the Workmen's Compensation Bureau from considering the claim filed in this case.

Because we do not know what arrangements exist between the two states, and because the issue has not been briefed and argued, we are not deciding the extraterritorial issues if such exist and as may be related to § 65–08–01, N.D.C.C., and § 92–614 of the Revised Codes of Montana.

For the reasons stated in this opinion, the judgment of the district court is reversed and the case is remanded to the North

Dakota Workmen's Compensation Bureau for further consideration of this claim.

KNUDSON, PAULSON, VOGEL and JOHNSON, JJ., concur.