Theobald TRAUTMAN, Appellant,

v.

STANDARD OIL COMPANY OF INDIANA, AMERICAN OIL DIVISION, Respondent.

No. 47486.

Supreme Court of Minnesota.

Feb. 24, 1978.

---

Smith, Carpenter, Petterson & Bailey and John P. Bailey, Bemidji, for appellant.

Rufer, Hefte, Pemberton, Schulze, Sorlie & Sefkow and Gerald S. Rufer, Fergus Falls, for respondent.

Heard before PETERSON, SCOTT, and IVERSON, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from summary judgment in favor of Standard Oil Company of Indiana, American Oil Division [1] (American Oil) in a common-law action for negligence brought by appellant, Theobald Trautman. We affirm.

On October 29, 1968, Trautman was injured as a result of a fall which allegedly occurred when he slipped on oil at a terminal operated by American Oil in Moorhead, Minnesota. Trautman was hospitalized until November 15, 1968, for treatment of a cerebral concussion. During this period, he had headaches and blackouts and was given valium.

Within a week after the accident and while still hospitalized, Trautman signed a preliminary application seeking benefits from the North Dakota Workmen's Compensation Fund. The application named American Oil as Trautman's employer. The designation of American Oil as the employer is alleged to have been typed on the form by an agent of American Oil and not by Trautman. Trautman claims that he was not advised as to the legal ramifications of filing the claim with American Oil listed as his employer, nor was he represented by counsel at any time during the application process. Trautman testified that he merely assumed he was entitled to receive those benefits because he was injured while working.

On November 25, 1968, the commissioners of the North Dakota Workmen's Compensation Bureau awarded Trautman the sum of $50 per week from the date of the injury to the date of the award and ordered the payments to continue in accordance with state law until further order. The award was mailed to Trautman and indicated American Oil as the employer.

On July 18, 1972, Trautman brought the present common-law action in Minnesota against American Oil, alleging that American Oil negligently caused the injuries suffered in the same October 29, 1968, accident

---

1. Respondent is referred to interchangeably as "Standard Oil" and "American Oil" by the parties and in prior proceedings.

for which Trautman received workmen's compensation benefits under North Dakota law. In its answer, American Oil claimed that Trautman was its employee and that it contributed premiums to the North Dakota Workmen's Compensation Fund on behalf of its employees. American Oil therefore asserted that it should be relieved from common-law liability by virtue of North Dakota Cent. Code 65–01–08, which states that the North Dakota Workmen's Compensation Fund provides the exclusive remedy of an employee against his employer.

On May 23, 1973, approximately 10 months after the commencement of this action, the North Dakota Workmen's Compensation Bureau awarded permanent and total disability compensation to Trautman at $50 a week. American Oil again was named as the employer. Ten days were given to protest this award. Trautman has never attempted to vacate or set aside these awards. Also, in 1967, Trautman had filed a claim for a different injury under the North Dakota Workmen's Compensation Law, which claim was denied on April 5, 1967. In that order the bureau named Trautman's employers as Nichelson Oil and Standard Oil.

Summary judgment in the instant action was granted in favor of American Oil by the district court on grounds that "the decision of the North Dakota Workmen's Compensation Bureau is res judicata as to the existence of the employment relation between the plaintiff and the defendant, that the decision is entitled to full faith and credit in the proceeding before the court, and that it was not procured by the fraud of defendant."

The evidence presented to the district court regarding the issue of an employment relationship between the parties is extensive, with lengthy depositions and other documentary records, and includes the following:

Around 1960, in response to a Fargo, North Dakota, newspaper advertisement, Trautman contacted Vern Nichelson, the Fargo agent for American Oil, for the purpose of obtaining employment as a fuel truck driver. In an interview at Nichelson's home, Nichelson told Trautman that he would be working for and accountable to Nichelson. Nichelson had started as a salaried employee of American Oil in 1946 and had advanced to his present business arrangement, which seems to characterize him as part employee and part independent contractor.

The following paragraph appeared in a December 1, 1965, contract between American Oil and Nichelson, in which Nichelson was designated as the "Employee" and truck drivers were referred to as the "Agent's-Salesmen":

"In the employment of his Agent's-Salesmen, Employee will exercise care to select persons of integrity, reliability, and industry. Each Agent's-Salesman employed by Employee shall possess physical qualifications at least equal to the physical qualifications required by Company of its own employees, and if requested by Employee, Company will, without expense to Employee, give physical examinations to persons applying to Employee for the job of Agent's-Salesman, it being understood that such Agent's-Salesmen are employees of Employee and not of Company. *The rates of pay, wages, hours of employment and other conditions of employment of Employee's Agent's-Salesmen, will be determined by agreement by the Employee and such Agent's-Salesmen, and shall not be subject to approval or control of any kind by the Company; it being understood that such Agent's-Salesmen are employees of Employee and not of Company."* (Italics supplied.)

During all relevant times, Nichelson employed drivers to carry out his business, which involved the sale of American Oil's products. Nichelson paid his employees, including Trautman, from his own account and took an income tax deduction for compensation paid to his drivers. Nichelson could hire and fire his drivers, establish wages, and control the methods and manner of performance of the work of the drivers.

Trautman was never offered nor did he receive any of the fringe benefits normally offered to employees of American Oil and he never negotiated with them regarding his salary. Nichelson paid for Trautman's sick leave and vacations. Employee Social Security and withholding tax payments were made by American Oil, but Nichelson reimbursed the company for these payments. However, American Oil paid the employer's share of Social Security taxes, workmen's compensation payments, and unemployment compensation taxes for Nichelson's drivers.

The two salient issues presented from this factual setting are:

(1) Is the decision of the North Dakota Workmen's Compensation Bureau res judicata as to the existence of the employment relationship between Trautman and American Oil?

(2) Is this decision by the North Dakota Workmen's Compensation Bureau entitled to full faith and credit by a Minnesota court, preventing a subsequent common-law action?

1. The district court was correct in pointing out that the supreme courts of both North Dakota and Minnesota have held that determinations of state worker's compensation commissions are final decisions entitled to res judicata effect. See, *Brix v. General Accident and Assurance Corp.*, 254 Minn. 21, 93 N.W.2d 542 (1958); *Stine v. Weiner*, 238 N.W.2d 918 (N.D.1976). Similarly, the district court appropriately emphasized the exclusive nature of the statutory worker's compensation remedy in both states. North Dakota Cent. Code 65–01–08 provides:

> "Contributing employer relieved from liability for injury to employee.—Where a local or out of state employer has secured the payment of compensation to his employees by contributing premiums to the fund, the employee, and the parents of a minor employee, or the representatives or beneficiaries of either, shall have no right of action against such contributing employer or against any agent, servant, or other employee of such employer for damages for personal injuries, *but shall look solely to the fund for compensation.*" [2] (Italics supplied.)

In addition, North Dakota Cent. Code 65–04–28 provides:

> "Complying employers not liable for injuries to or deaths of employees—Common-law actions barred.—Employers who comply with the provisions of this chapter *shall not be liable to respond in damages at common law* or by statute for injury to or death of any employee, wherever occurring, during the period covered by the premiums paid into the fund." (Italics supplied.)

Based upon these statutory provisions, the district court stated:

> "* * * The general rule, therefore, is that recovery for tort or wrongful death will not be permitted in any state if the defendant is relieved from such liability by the worker's compensation statute of a state under which the defendant is required to provide such insurance, and if the plaintiff has obtained an award for the injury. Restatement 2d, Conflict of Laws, § 184.
>
> It is thought unfair that a person who is required to provide insurance against a risk under the workmen's compensation statute of one state which gives him immunity from liability for tort or wrongful death should not enjoy that immunity in a suit brought in other states. To deny a person the immunity granted him by a workmen's compensation statute of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be. All states are sympathetic with the policies underlying workmen's

---

**2.** Similarly, Minn.St. 176.031 provides that "[t]he liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee, his personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death. * * *"

compensation, and all states grant certain persons immunity from liability for tort or wrongful death * * *. Restatement 2d, Conflict of Laws, § 184, Comment: b.

The finality afforded by the doctrine of res judicata is clearly in harmony with the general policy of the worker's compensation acts.

"For these reasons therefore, this court believes the doctrine of res judicata should be applied in this case."

Trautman relies almost exclusively on the recent decision of the North Dakota Supreme Court in *Stine v. Weiner*, 238 N.W.2d 918 (N.D.1976). In *Stine*, plaintiff brought a common-law action in North Dakota to recover for injuries he sustained in a North Dakota automobile accident in which the driver of the car in which plaintiff was riding was killed. The action was brought against the estate of the driver. Both plaintiff and the driver were employees of the same New York employer. Both lived and worked in New York but were in North Dakota to supervise the installation of certain equipment. After the accident, plaintiff returned to New York and applied for benefits under the New York workmen's compensation law. Following a hearing in New York, at which plaintiff was represented by an attorney, benefits were awarded by the New York Workmen's Compensation Board.

The plaintiff in *Stine* then brought the North Dakota common-law action. In that action, plaintiff sought to relitigate the issue of whether or not the accident arose within the course of his employment. Defendant asserted that the New York workmen's compensation law provided the exclusive remedy and that the issue of "course of employment" was res judicata due to the New York Board's decision. 238 N.W.2d 921. In affirming the trial court's granting of summary judgment in favor of defendant, the North Dakota Supreme Court determined that the common-law action was barred under both North Dakota and New York law. The court stated:

"The Workmen's Compensation Bureau in North Dakota, pursuant to § 65–05–03, N.D.C.C., is empowered to hear and determine 'all questions within its jurisdiction.' Among these questions, under § 65–05–05, N.D.C.C., is whether or not the claimant's injury occurred 'in the course of * * * employment.' Such determination by the North Dakota Workmen's Compensation Bureau would be, in our judgment, res judicata on the question of whether or not the injury occurred in the course of the claimant's employment, unless such decision is timely appealed from, under § 65–10–01, N.D. C.C., *or unless the claimant shows, in a subsequent proceeding, that extenuating factors, such as were present in Bekkedahl, supra, deprived him of the opportunity to make an informed decision about filing and processing his claim under the applicable Workmen's Compensation Act.*" 238 N.W.2d 925 (Italics supplied.)

Thus, Trautman contends that if the present action arose in North Dakota, the doctrine of res judicata would not bar relitigation of the employment issue if the "extenuating factors" of *Bekkedahl v. North Dakota Workmen's Comp. Bureau*, 222 N.W.2d 841 (N.D.1974), are present.

In *Bekkedahl*, a resident of North Dakota was injured while working in Montana. Plaintiff received an award under the Montana Workmen's Compensation Act and then filed for benefits under the North Dakota Act. In holding that the North Dakota claim was not barred by the Montana award, the North Dakota Supreme Court stated:

"Considering the obvious differences in the Workmen's Compensation benefits of the states of Montana and North Dakota at the time the claimant's rights accrued, that these differences were not pointed out to the claimant nor known by him at the time he filed his claim with Montana, that the claimant had very recently undergone serious brain surgery and was still recuperating from that surgery as well as from his other injuries at the time he was asked to file the claim with the Industrial Accident Board of Montana,

that the North Dakota Legislature intended by the 1955 Amendment to Section 65–05–05, N.D.C.C., to prevent duplicate benefits, and since allowing the claim in the instant case will not permit a duplication of benefits, we conclude that § 65–05–05, N.D.C.C., does not prevent the Workmen's Compensation Bureau from considering the claim filed in this case." 222 N.W.2d 846.

Trautman claims that in the present case sufficient facts are shown to establish the existence of the "extenuating factors" of *Bekkedahl* as required by *Stine*. However, the court's decision in *Bekkedahl* to allow the employee to seek a remedy from the North Dakota Bureau after receiving Montana compensation benefits does not treat a like proposition. In explanation, that court stated in *Stine* :

"Unlike *Bekkedahl*, however, the instant case does not present an issue of whether or not Stine is entitled to additional benefits under the North Dakota Workmen's Compensation Act. Rather, we are confronted with a question of remedies—whether Stine can pursue both his workmen's compensation claim in New York and a common-law action against Weiner in North Dakota. We must, therefore, determine whether or not the policy of North Dakota, as reflected by our workmen's compensation statutes, is obnoxious to the workmen's compensation policy of New York—which would preclude this suit and permit dismissal of the action." 238 N.W.2d 924.

The North Dakota court went on to say:
"Based upon a comparison of the North Dakota and New York statutes set forth above, we find nothing 'obnoxious to the policy of our state' in the New York Workmen's Compensation Law, as applied to the instant case. On the contrary, we believe that the remedies provided for in each respective Act are identical, and that the decision of the workmen's compensation authority in each State is accorded the same treatment accorded a judgment of a court of competent jurisdiction." 238 N.W.2d 926.

Therefore, *Stine v. Weiner, supra,* rather than being helpful to Trautman, would seem to militate against his interest. Just as in *Stine*, we have nothing "obnoxious to the policy of our state" in the case at hand. The extenuating circumstances relied upon by Trautman are not present.

 While this court need not decide the employment relationship issue, it is difficult to resist the temptation to suggest that it appears from the extensive and detailed depositions contained in the record that there was at least joint employment of Trautman by both Nichelson and American Oil. It would seem inconceivable that American Oil could successfully resist a worker's compensation claim against it, had it decided to deny that it was the employer. If this speculation is questionable, the way to a correct solution is by an appeal from the North Dakota Workmen's Compensation Bureau's decision, not by collateral attack upon the award. No appeal was taken from the North Dakota Workmen's Compensation Board's determination even though Trautman was represented by an attorney before the last award was granted.[3]

---

**3.** Trautman claims that the issue of who was his employer was not actually litigated because the issue was "not essential to the decision of the North Dakota Workmen's Compensation Bureau * * *." North Dakota Cent. Code 65–05–05, however, provides in pertinent part:
"Payments made to insured employees injured in course of employment and to their dependents.—The bureau shall disburse the fund for the payment of compensation and other benefits as provided in this chapter to employees, or to their dependents in case death has ensued, who:
"1. Are subject to the provisions of this title;

"2. *Are employed by employers who are subject to this title*; and
"3. Have been injured in the course of their employment." (Italics supplied.)
An employer-employee relationship must exist in order to impose liability under the North Dakota act. *Kipp v. Jalbert*, 110 N.W.2d 825, 828 (N.D.1961). In addition, the doctrine of res judicata is generally applicable to a commission or bureau determination of the existence of an employment relationship, 3 Larson, Workmen's Compensation Law, § 79.71, pp. 15–313 to 15–317. Therefore, this argument of Trautman must fail.

We therefore hold that a final determination as to the employment relationship of Trautman and American Oil was made by the North Dakota Workmen's Compensation Bureau and is res judicata, preventing this common-law action.

■ 2. The district court held that the North Dakota administrative decision should be given full faith and credit in the present proceeding. North Dakota Cent. Code 65–05–03 provides that a decision of the North Dakota Bureau "shall be entitled to the same faith and credit as a judgment of a court of record." In *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 441, 64 S.Ct. 208, 214, 88 L.Ed. 149, 156 (1943), the United States Supreme Court held that a worker's compensation award must be given "the same effect as res judicata in another state as it has in the state where rendered." If, of course, fraud is established, the North Dakota decision is not entitled to full faith and credit in Minnesota. *Moe v. Shaffer*, 150 Minn. 114, 184 N.W. 785 (1921). The trial court answers this question of fraud in its order by stating that "it was not procured by the fraud of defendant" and goes on in its memorandum attached thereto as follows:

"* * * However, this court is convinced that there was no fraud, as a matter of law, in the procurement of the worker's compensation award. At best, the bureau may have erred in its determination. But a determination of a sister state otherwise entitled to full faith and credit cannot be collaterally attacked for mere error or irregularity in the proceeding. *Clay, Robinson & Co. v. Larson*, 125 Minn. 271, 146 N.W. 1095 (1914)."

After reviewing the record thoroughly, we must agree with the trial court. In his brief, Trautman argues upon the facts set forth above in this opinion:

"* * * It is apparent from the above facts that the jury could conclude that the American Oil Company falsely represented to Theobald Trautman and the North Dakota Workmen's Compensation Bureau the material fact that American Oil Company was the employer of Theobald Trautman; that this misrepresentation was perpetrated by American Oil Company at a time when it knew, by reason of its knowledge of the ordinary indicia of the employer-employee relationship and its knowledge of the contents of its contract with its dealer wherein it states that the dealer's employees are his employees and not employees of the Company that Theobald Trautman was not, in truth, the employee of American Oil Company; or that American Oil Company recklessly disregarded the question of whether or not its representation to Trautman and the North Dakota Workmen's Compensation Bureau was, in fact, true; that this misrepresentation was made with the intention on the part of American Oil Company to induce Theobald Trautman to sign the petition containing the misrepresentation so that the same could be submitted to the North Dakota Workmen's Compensation Bureau, uncontested, and hopefully result in a determination by them that Theobald Trautman was the employee of American Oil Company and thereby, hopefully, precluding Theobald Trautman from at any time in the future instituting suit against American Oil Company based upon their negligently causing the injuries which he sustained on October 29, 1968; that the motivation for this fraudulent conduct on the part of American Oil Company was to foreclose the possibility of American Oil Company being responsible for paying a claim which would be a minimum of three times the amount of the workmen's compensation benefits for which they would be legally responsible to pay the premiums for."

While such employment arrangements are not ordinary, they appear to be peculiar to this business and there appears to be no evidence of fraudulent design.

There is no indication that American Oil attempted to mislead Trautman into claiming American Oil as his employer. In fact,

the North Dakota Bureau found that both American Oil and Nichelson were Trautman's employers when determining a 1967 claim filed by Trautman for a different injury. Nothing in the record indicates that the relationship changed in any significant way between 1967 and the date of the injury involved in the present case. Thus, American Oil was justified in treating Trautman as its employee for workmen's compensation purposes and therefore could not have committed fraud by maintaining the same.

We agree that there is no genuine issue of material fact and that the issue of fraud was properly determined as a matter of law. The trial court was correct in granting summary judgment for American Oil.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.