UNITED STATES FIDELITY &
GUARANTY COMPANY,
Plaintiff/Appellant,

v.

NORTH DAKOTA WORKMEN'S
COMPENSATION BUREAU,
Defendant/Appellee.

Civ. No. 9513.

Supreme Court of North Dakota.

Feb. 1, 1979.

Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger, Moorhead, Minn., for plaintiff/appellant; argued by Steven J. Cahill, Moorhead, Minn.

Richard J. Gross, Sp. Asst. Atty. Gen., Bismarck, for defendant/appellee.

PAULSON, Justice.

The United States Fidelity & Guaranty Company [hereinafter USF & G] appeals to this court from the judgment of the Burleigh County District Court awarding a summary judgment to the North Dakota Workmen's Compensation Bureau [hereinafter Bureau]. USF & G, an insurance carrier for the Minnesota Workers' Compensation Division, brought an action against the Bureau for contribution or indemnification for benefits paid by USF & G to the claimant, Phyllis Keeping, under the Minnesota workmen's compensation statutes. The claimant's husband, James Keeping, a Minnesota resident, was an employee of a North Dakota-based company on a South Dakota construction project at the time he died in a hotel fire in Minnesota. Phyllis Keeping's claim for benefits was denied by the Bureau because the Bureau lacked jurisdiction over the accident. Mrs. Keeping then filed for and was awarded benefits under the Minnesota workmen's compensation statutes. USF & G began paying Mrs. Keeping benefits and subsequently brought this action against the Bureau for contribution or indemnification. The district court dismissed the action and awarded a summary judgment to the Bureau, and USF & G has appealed. We affirm.

James Keeping was a foreman for Twin City Construction Company, Inc. [hereinafter Company], a North Dakota corporation doing business in several States, including North Dakota, South Dakota, and Minnesota. Mr. Keeping, who resided in Minnesota, worked ninety percent of his time in North Dakota. At the time of his death he was employed on a project in South Dakota. Although he worked in South Dakota Mr. Keeping would travel to his Minnesota home each weekend, stop at the Company's warehouse in Fargo to pick up supplies, and then return to the South Dakota job site.

During the last week of January in 1977, Mr. Keeping was enroute from South Dakota to his Minnesota home for the weekend. On his way home he planned to stop in Fargo to drop off a fellow employee who lived there. Mr. Keeping chose to travel to Fargo on Minnesota Highway 75, which he considered to be a better road than U.S. Highway 81. A winter storm forced the two men to stay overnight at Breckenridge, Minnesota, in the Stratford Hotel. That night, January 29, 1977, Mr. Keeping died in a fire which destroyed the hotel.

Mrs. Keeping then applied for workmen's compensation benefits in both Minnesota and North Dakota. The Bureau asserted that it lacked jurisdiction over the accident and denied Mrs. Keeping's claim for benefits. She appealed the decision to the Burleigh County District Court, but then agreed to remand the case to the Bureau for a rehearing.

Before a rehearing was held, the Minnesota Workers' Compensation Division determined that Minnesota had jurisdiction over Mr. Keeping's death claim and awarded benefits to Mrs. Keeping. She then withdrew her request for a rehearing before the Bureau. USF & G then brought the

present action for contribution or indemnification from the Bureau for benefits that USF & G was ordered to pay Mrs. Keeping under the Minnesota statutes. USF & G claims that it is entitled to contribution or indemnification because North Dakota is the primary situs of employment and North Dakota, therefore is primarily liable.

Although the present action was brought by USF & G, we will first consider whether Mrs. Keeping was entitled to bring an action for benefits against the Bureau in North Dakota. We will then consider whether USF & G is entitled to contribution or indemnification.

The following issues are raised for appeal:

1. Is Mrs. Keeping entitled to workmen's compensation death benefits from the Bureau?
2. Is USF & G entitled to contribution or indemnification from the Bureau?
3. Did the trial court err in awarding a summary judgment to the Bureau?

The North Dakota workmen's compensation statutes provide an exclusive, compulsory, and comprehensive program designed to compensate workers for injuries received in the course of their employment. The North Dakota workmen's compensation program is one of the few such programs in the United States in which the Bureau serves as both the administrator and the insurance carrier. Coverage for injuries and death under the North Dakota workmen's compensation statutes is determined solely by the North Dakota Legislature and is not affected by coverage provided by other States. *See* Title 65 of the North Dakota Century Code, and *Breitwieser v. State*, 62 N.W.2d 900, 902–903 (N.D.1954).

We must determine whether or not Mrs. Keeping's acceptance of benefits from Minnesota constitutes a waiver of any right she might have to obtain benefits from the North Dakota Bureau.

Chapter 65–08, N.D.C.C., determines the coverage provided by the North Dakota workmen's compensation statutes for injuries or death occurring outside of North Dakota. Section 65–08–01, N.D.C.C., provides, in pertinent part:

"*Extraterritorial coverage, when and how furnished.*—Compensation shall be paid on account of injuries occurring outside this state or because of death due to an injury occurring outside of this state only when:

1. . . .

2. A North Dakota employee sustains an injury beyond the borders of this state in a service which is incidental to and is referable to the principal employment, the situs of which is within North Dakota;

3. A North Dakota employer and the bureau previously shall have contracted for insurance protection for employees while working outside of this state in the employment in which the injury occurred, which employment is incidental to or referable to the principal employment the localization and situs of which is not in North Dakota;

4. . . ."[1]

Under the preceding pertinent subsections of § 65–08–01, N.D.C.C., the Bureau is liable for an injury that occurred outside of North Dakota if the act was incidental to and referable to the principal employment, the situs of which is within North Dakota, or, if the Bureau and an employer contracted for special extraterritorial coverage, where the act was incidental to or referable to the principal employment, the situs of which is not in North Dakota.

■ Chapter 65–05, N.D.C.C., involves the payment of compensation for death or injuries covered by Title 65, N.D.C.C. Section 65–05–05, N.D.C.C., provides, in pertinent part:

"*Payments made to insured employees injured in course of employment and to*

---

1. Subsection 2 is not applicable because the situs of the principal employment was in South Dakota, not North Dakota. In addition, USF & G never asserted that Mr. Keeping's employer had purchased extraterritorial coverage, pursuant to subsection 3. Therefore, subsection 3 is not applicable.

*their dependents.*—The bureau shall disburse the fund for the payment of compensation and other benefits as provided in this chapter to employees, or to their dependents in case death has ensued, who:

    1. Are subject to the provisions of this title;

    2. Are employed by employers who are subject to this title; and

    3. Have been injured in the course of their employment.

*Where the injury is sustained outside the state of North Dakota and compensation is claimed and received through some other state act no compensation shall be allowed under this title."* [Emphasis added.]

The Bureau determined that it lacked jurisdiction to provide benefits for Mr. Keeping's death; Mrs. Keeping then claimed and received worker's compensation benefits from Minnesota; and she did not appeal the Bureau's determination that the Bureau lacked jurisdiction. Even if the Bureau had had concurrent jurisdiction with Minnesota over Mr. Keeping's death claim, Mrs. Keeping waived her right to claim and receive any compensation from the Bureau, pursuant to § 65–05–05, N.D. C.C., by claiming and receiving benefits from Minnesota.

■ Section 65–05–05, N.D.C.C., is clear and unequivocal. The prior acceptance of workmen's compensation benefits from another State completely bars recovery from the Bureau, even though the Bureau would have had jurisdiction to pay benefits in the first place.[2] Other jurisdictions with similar statutes have adopted the same rationale. *See Thomas v. Transport Ins. Co.*, 532 S.W.2d 263 (Tenn.1976); *Nevada Industrial Commission v. Underwood*, 79 Nev. 496, 387 P.2d 663 (1963); *Travelers Ins. Co. v. Cason*, 132 Tex. 393, 124 S.W.2d 321 (1939); and *James v. Texas Employers Ins. Ass'n*, 98 S.W.2d 425 (Tex.Civ.App.1936).

In *Underwood, supra* 387 P.2d at 665, the court recognized the general rule laid down in *Industrial Commission of Wisconsin v. McCartin*, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), that "in the absence of contravening statutory provision purporting to bar a second recovery, successive awards are permissible." The Nevada Supreme Court, however, denied benefits to the claimant who had already received benefits from Idaho because Nevada law, NRS 616.-530(1), provides that "'the act of commencing such action or proceeding' in another state to recover damages or compensation, shall constitute an 'irrevocable waiver' of any and all compensation in Nevada". *Underwood, supra* 387 P.2d at 665.[3]

USF & G, in its brief, cited *Bekkedahl v. North Dakota Workmen's Compensation Bureau*, 222 N.W.2d 841 (N.D.1974), in support of its contention that the Bureau could award compensation to a worker even though the worker had already claimed and received compensation from another State. This analysis, which appears to conflict with § 65–05–05, N.D.C.C., fails to recognize our main reason for awarding North Dakota benefits to the claimant in *Bekkedahl, supra, i. e.,* because the claimant's condition precluded him from making an informed choice of claiming benefits from either North Dakota or Montana. *See Stine v. Weiner*, 238 N.W.2d 918, 924 (N.D.1976).

---

**2.** The principles expressed in *Breitwieser, supra,* do not apply to the instant case.

**3.** *"NRS 616.530. Commencement of action in another state to recover damages, compensation by employee injured out of state constitutes irrevocable waiver of compensation due under Nevada law; satisfaction of foreign judgment against Nevada employer.*

    1. If an employee who has been hired or is regularly employed in this state receives personal injury by accident arising out of and in the course of such employment outside this state, and he, or his personal or legal representatives, dependents or next of kin shall commence any action or proceeding in any other state to recover any damages or compensation on account of such injury or death from such employer, the act of commencing such action or proceeding shall constitute an irrevocable waiver of any and all compensation on account of such injury or aeath to which persons would otherwise have been entitled according to the laws of this state."

In *Bekkedahl, supra,* the claimant was a resident of North Dakota; his employment was based in North Dakota; and he was seriously injured in Montana. The claimant's injuries included a fractured skull, fractured shoulder, and possible fractured ribs. Shortly after he underwent brain surgery for the fractured skull, the claimant was given a Montana compensation form to sign. He was not informed that he had a right to file a claim for North Dakota benefits with the Bureau or that North Dakota's benefits were more favorable than Montana's.

In *Bekkedahl, supra* 222 N.W.2d at 846, we stated:

"Considering the obvious differences in the Workmen's Compensation benefits of the states of Montana and North Dakota at the time the claimant's rights accrued, that these differences were not pointed out to the claimant nor known by him at the time he filed his claim with Montana, that the claimant had very recently undergone serious brain surgery and was still recuperating from that surgery as well as from his other injuries at the time he was asked to file the claim with the Industrial Accident Board of Montana, that the North Dakota Legislature intended by the 1955 Amendment to Section 65–05–05 N.D.C.C., to prevent duplicate benefits, and since allowing the claim in the instant case will not permit a duplication of benefits, we conclude that § 65–05–05, N.D.C.C., does not prevent the Workmen's Compensation Bureau from considering the claim filed in this case."

The preceding quotation confirms that § 65–05–05, N.D.C.C., was intended to avoid a duplication of benefits. In addition, the purpose of § 65–05–05 is "to compel the claimant to seek his remedy in one jurisdiction". Note describing the amendment to § 65–0505, NDRC 1943, in Report of the North Dakota Legislative Research Committee, 34th Legislative Assembly, 1955, at 37, cited in *Bekkedahl, supra* 222 N.W.2d at 843.

Our decision in *Bekkedahl* does not change the general effect of § 65–05–05, N.D.C.C., that a claimant's application for and receipt of benefits from another State constitutes an irrevocable waiver of his right to obtain benefits from North Dakota. In *Bekkedahl,* which is strictly limited to its facts, we held that where the claimant applied for benefits from Montana under extreme circumstances which showed that he lacked capacity to make an informed choice, his application for benefits from Montana did not constitute a waiver of his right to apply for benefits from North Dakota. Note, however, that there was no double recovery and that no North Dakota benefits were paid to Bekkedahl for the period of time during which he received Montana benefits.

In the instant case, we conclude that, even if Mrs. Keeping had originally been entitled to North Dakota benefits, her receipt of benefits from Minnesota would have precluded her from obtaining benefits from the Bureau pursuant to § 65–05–05, N.D.C.C. The facts in this case indicate that Mrs. Keeping made an informed choice in accepting Minnesota benefits because Minnesota's benefits were higher than North Dakota's benefits.

Now that we have determined that Mrs. Keeping could not have obtained benefits from the Bureau after she had accepted Minnesota benefits, we will consider whether USF & G is entitled to contribution or indemnification from the Bureau. The issue of USF & G's standing to bring the present action is of primary importance to our determination of USF & G's rights.

■ As we previously stated, the North Dakota workmen's compensation program is mandatory, comprehensive, and exclusive. All rights and obligations under the program are determined by Title 65, N.D.C.C. In order for USF & G to have standing to bring an action against the Bureau, standing for such a suit must be conferred by Title 65, N.D.C.C.

■ A perusal of Title 65, N.D.C.C., indicates that the workmen's compensation

statutes confer no basis for standing upon which USF & G may sue. The Bureau is authorized to pay compensation only to employees or their dependents. § 65–05–05, N.D.C.C. There is no provision authorizing the Bureau to pay contribution or indemnification to an insurance company that provides coverage for an out-of-State workmen's compensation program.[4] Because the North Dakota program is exclusive and comprehensive, the Bureau cannot disburse its funds without statutory authorization. Consequently, USF & G has no basis for recovery from the Bureau and, therefore, has no standing to bring this suit.

USF & G has asserted that it has standing to sue because of its relationship with Mrs. Keeping. We have already determined that Mrs. Keeping could not have commenced an action against the Bureau because she had already received benefits from Minnesota. Therefore, a claim by USF & G based upon Mrs. Keeping's standing is also barred. Furthermore, if USF & G's standing were based upon an assignment of Mrs. Keeping's claim to USF & G, the assignment of the claim would be void, pursuant to § 65–05–29, N.D.C.C.

We conclude that USF & G had no standing to bring the present action against the Bureau for contribution or indemnification. Although we determined that USF & G had no standing based upon statutory grounds, USF & G could not receive contribution based upon common law equitable grounds either.

■ Contribution can be awarded only when the parties are jointly liable on a common liability or burden. *Sayler v. Holstrom*, 239 N.W.2d 276 (N.D.1976); *United States Casualty Co. v. Standard Acc. Ins. Co.*, 175 Tenn. 559, 136 S.W.2d 504 (1940); *Exchange Mut. Indemnity Ins. Co. v. Zurich General Accident, Fire & Life Ins. Co.*, 122 Misc. 386, 202 N.Y.S. 720 (1924). Contribution was denied in *Standard, supra,* and *Zurich, supra,* both of which were workmen's compensation cases, because the different States' statutes made the parties' obligations entirely different.

■ In the present case USF & G and the Bureau are not jointly liable on a common liability or burden because their respective obligations are substantially different in the areas of amount of benefits for widows, amount of benefits for dependents, eligibility for benefits based upon dependents' ages, burial expenses, and special death benefits. In essence, the Bureau and USF & G have separate and distinct obligations based upon their respective State's workmen's compensation programs. There is no common liability to which the equitable remedy of contribution can be applied.

Furthermore, in Holstrom, supra 239 N.W.2d at 279, we quoted with approval from *Guillard v. Niagara Machine & Tool Works*, 488 F.2d 20, 23 (8th Cir. 1973), in which the Eighth Circuit Court of Appeals stated that indemnification is a remedy which enables " 'a person to recover reimbursement from another for the discharge of a liability which, as between them, should have been discharged by the other' ". Because the Bureau and USF & G have separate and distinct obligations regarding workmen's compensation benefits, USF & G is not entitled to indemnification because no obligation exists which should have been discharged by the Bureau rather than by USF & G.

In summary, we hold that Mrs. Keeping is not entitled to any workmen's compensation benefits from the Bureau. We further hold that USF & G is not entitled to any contribution or indemnification from the Bureau. Because there are no material facts in dispute, and the Bureau is entitled to a judgment in its favor as a matter of law, we hold that the district court did not err in granting a summary judgment for the Bureau.

The judgment of the district court is affirmed.

---

4. There is no "contract of indemnity" here as contemplated by Ch. 22–02, N.D.C.C. In addition, USF & G has no right to contribution under § 9–01–08, N.D.C.C.; nor under § 22–03–11, N.D.C.C., as a co-surety; nor under Ch. 32–38, N.D.C.C., as a joint tortfeasor.

ERICKSTAD, C. J., and PAULSON, PEDERSON, VANDE WALLE and SAND, JJ., concur.