**NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY, Plaintiff,**

**v.**

**DAIRYLAND INSURANCE COMPANY, Defendant.**

**Civ. No. A2–79–66.**

United States District Court, D. North Dakota, Northeastern Division.

March 12, 1980.

Thomas L. Zimney, Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, N. D., for plaintiff.

Patrick R. Morley, O'Grady & Morley, Grand Forks, N. D., for defendant.

## MEMORANDUM AND ORDER FOR JUDGMENT

BENSON, Chief Judge.

The above entitled diversity action arises out of payments made by plaintiff to its insured, Connie Orvik, pursuant to an automobile insurance policy conforming with the North Dakota Auto Accident Reparations Act (the no-fault law), N.D.Cent.Code Ch. 26–41. Plaintiff seeks to recover from defendant the payments made to Orvik, contending that defendant is primarily liable for them.

The parties have filed cross motions for summary judgment. F.R.Civ.P. 56. There do not appear to be any material facts in dispute, so the case may be disposed of by summary judgment.

The pertinent facts are as follows. On December 27, 1977, Connie Orvik was a passenger in an automobile owned and operated by Larry Jallo. Both Orvik and Jallo were North Dakota residents and Jallo's automobile was registered in North Dakota. While driving in East Grand Forks, Minnesota, the automobile in question collided with a Burlington Northern train. Orvik was injured and was hospitalized at the United Hospital in Grand Forks, North Dakota.

Plaintiff had issued an automobile insurance policy to Maynard Orvik, the father of Connie. Maynard was a resident of North Dakota and the policy issued to him by plaintiff covered automobiles registered in North Dakota. The policy was in effect on December 27, 1977. Connie was insured under the policy issued to Maynard. She filed claims with plaintiff for personal injury protection benefits, and plaintiff paid $10,473.43 for medical expenses incurred by Connie as a result of the December 27, 1977 accident.

Defendant had issued an automobile insurance policy to Jallo, which policy was in effect on December 27, 1977, and which covered the automobile involved in the accident. Both the policy issued to Maynard Orvik and the policy issued to Jallo complied with N.D.Cent.Code Ch. 26–41.

Before reaching the merits of the case, the court must determine whether the applicable law is the law of Minnesota or North Dakota. The parties appear to agree that Minnesota law applies. The court disagrees.

▪ In a diversity case a federal court must look to the conflict of law rules of the forum state to determine which state's law is to be applied. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The gist of this action is the assertion of the rights of an insured by her subrogee/insurer against a party allegedly legally obligated to the insured. The action is thus one arising from a contract, for the subrogation rights of the plaintiff arise from the contract of insurance covering Connie. *See Christy v. Menasha Corp.*, 297 Minn. 334, 211 N.W.2d 773 (1973); *Tschider v. Burtts*, 149 N.W.2d 710 (N.D.1967). The North Dakota conflict of law rule for disputes arising from a contract was at one time embodied in N.D.Cent.Code § 9–07–11, which provided as follows:

A contract is to be interpreted according to the law and usage of the place where it is to be performed, or if it does not indicate a place of performance, according to the law and usage of the place where it is made.

*See Nordenstrom v. Swedberg*, 143 N.W.2d 848 (N.D.1966).

In 1972 the North Dakota Supreme Court decided the case of *Issendorf v. Olson*, 194 N.W.2d 750 (N.D.1972). *Issendorf* was a tort case in which a North Dakota resident was injured in an automobile accident in Minnesota. The court abandoned the *lex loci delicti* doctrine and adopted the significant contacts approach to choice of law problems in tort cases. Utilizing this ap-

proach, the court, rather than looking only to the site of the injury, must look at all the facts and circumstances surrounding the occurrence and must "giv[e] controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." 194 N.W.2d at 754, *quoting Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y. S.2d 743, 749, 191 N.E.2d 279, 283 (1963).

*Issendorf* did not deal with a dispute arising out of a contract. The significant contacts approach to conflict of law problems was precluded in contract cases in 1972 by the existence of N.D.Cent.Code § 9–07–11, *supra.* In 1973, however, the North Dakota legislature repealed, without further provision, § 9–07–11. 1973 Sess.Laws, ch. 77, § 1.

██ Since *Nordenstrom v. Swedberg, supra,* was decided in 1966, there have been no North Dakota cases dealing with choice of law in cases arising from contract. The decision in *Issendorf* and the repeal of § 9–07–11 lead the court to conclude that the North Dakota Supreme Court would apply the significant contacts rule to choice of law problems in cases arising from contract. Such an approach would conform to *Issendorf* and to the approach recently adopted in several other jurisdictions. *See, e. g., Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954); *Urhammer v. Olson*, 39 Wis.2d 447, 159 N.W.2d 688 (1968). The court notes that in *Issendorf* the court relied heavily on the New York Court of Appeals case of *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). *Auten v. Auten, supra*, in which New York adopted the significant contacts approach in contract cases, utilizes the same reasoning as *Babcock* and was quoted with approval in *Babcock*. The North Dakota

Supreme Court would likely adopt the *Auten* approach to choice of law questions in contract cases, just as it adopted the *Babcock* approach in tort cases.

In this case plaintiff and defendant are each an insurer. The issue is which of the two is primarily liable for the payment of medical expenses incurred by Connie Orvik as a result of the December 27, 1977 accident. The significant contacts with North Dakota are: (1) both the injured party and the driver of the automobile were North Dakota residents in 1977; (2) the automobile involved in the accident was registered in North Dakota; and (3) the insurance policies in question were entered into, issued and delivered in North Dakota. The only contact with Minnesota is that the accident occurred there.[1] Such a contact is not significant in contract cases involving a policy of automobile insurance. *Urhammer v. Olson*, 39 Wis.2d 447, 159 N.W.2d 688, 690 (1968); *Peterson v. Warren*, 31 Wis.2d 547, 143 N.W.2d 560, 564 (1966). All the significant contacts in this case are with North Dakota. The law of North Dakota will be applied.

The relevant North Dakota law is contained in N.D.Cent.Code Ch. 26–41. The particular statutes involved are as follows:

26–41–07. Persons entitled to basic no-fault benefits.—Each basic no-fault insurer of a secured motor vehicle shall pay basic no-fault benefits without regard to fault for economic loss resulting from:

1. Accidental bodily injury sustained within the United States of America, its territories or possessions, or Canada by the owner of the motor vehicle or any relative of the owner:

    a. While occupying any motor vehicle, or

---

1. Defendant asserts that Minnesota law should apply because Minn.Stat.Ann. § 65B.42 states that one of the purposes of Minnesota's no-fault law is "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents *within this state* . . . ." (emphasis added). Such a policy consideration may be relevant to choice of law questions. *Peterson v. Warren*, 31 Wis.2d 547, 143 N.W.2d

560, 564–65 (1966). In this case, the public policy of Minnesota and North Dakota as it relates to the victim of the accident is the same. N.D.Cent.Code § 26–41–02 declares one of the purposes of the North Dakota no-fault law is to avoid inadequate compensation to victims of motor vehicle accidents. The victim, Connie Orvik, has been compensated, and thereby the public policy of both states has been satisfied.

b. While a pedestrian as the result of being struck by a motor vehicle, which, for the purpose of this subdivision, shall also include a motorcycle.

2. Accidental bodily injury sustained by any other person while occupying the secured motor vehicle if the accident occurs within the United States of America, its territories or possessions, or Canada.

3. Accidental bodily injury sustained by any other person as a result of being struck by the secured motor vehicle while a pedestrian in this state.

26–41–10. Priority of applicable security—Coordination of benefits.—

1. A basic no-fault insurer shall have the primary obligation to make payment for economic loss because of accidental bodily injury arising out of the operation of a motor vehicle;

.   .   . .

2. As between applicable security basic no-fault benefits shall be payable as follows:

a. As to any person injured while occupying a secured motor vehicle, .   . the benefits shall be payable by the basic no-fault insurer of the secured motor vehicle.

b. As to any person who is injured while occupying an unsecured motor vehicle, or while being struck as a pedestrian by an unsecured motor vehicle, the benefits shall be payable by the basic no-fault insurer affording the benefits to the injured person.

.     .     .     .     .

26–41–13. Insurer's right of subrogation.—A basic no-fault insurer which has paid or may become obligated to pay basic no-fault benefits under this chapter shall be subrogated to the extent of its obligations to all of the rights of the injured person against any person or organization other than a secured person. The subrogee shall have a lien to the extent of its obligations, and no release of such rights shall be effective against such rights without the subrogee's consent.

"Secured motor vehicle" is defined in N.D. Cent.Code § 26–41–03:

.     .     .     .  .     .

16. "Secured motor vehicle" means a motor vehicle with respect to which the security required by this chapter was in effect at the time of its involvement in the accident resulting in accidental bodily injury.

■ The action here is brought by a basic no-fault insurer which has paid basic no-fault benefits and is subrogated to all the rights of the injured person, Connie Orvik, against another basic no-fault insurer, which was allegedly obligated to pay basic no-fault benefits to Connie. N.D.Cent.Code § 26–41–13.

The automobile involved in the accident was a secured motor vehicle. The automobiles owned by Maynard Orvik and insured by plaintiff were also secured motor vehicles. Connie Orvik was an insured under the policy issued to Maynard. Connie was entitled to basic no-fault benefits from plaintiff under N.D.Cent.Code § 26–41–07(1)(a), which requires that a no-fault insurer of a secured motor vehicle shall pay benefits for economic loss resulting from accidental bodily injury sustained by the owner of the motor vehicle or any relative of the owner *while occupying any motor vehicle.* Connie was also entitled to basic no-fault benefits from defendant under N.D.Cent.Code § 26–41–07(2), which requires that a no-fault insurer of a secured motor vehicle shall pay benefits for economic loss resulting from accidental bodily injury *sustained by any other person* while occupying the secured motor vehicle. Both plaintiff and defendant have provided applicable security for the economic loss suffered by Connie. To determine which insurer is primarily liable for Connie's economic losses requires reference to N.D.Cent. Code § 26–41–10, the provisions of which have been set out in this opinion.

Subsection 1 of § 26–41–10 is not helpful because both plaintiff and defendant are basic no-fault insurers. Subsection 2(a) appears to be dispositive of the question of primary liability. It provides that as be-

tween applicable security the benefits shall be paid by the basic no-fault insurer of the secured motor vehicle. Connie Orvik was injured while occupying a secured motor vehicle. Defendant was the basic no-fault insurer of that secured motor vehicle. Defendant is therefore primarily liable for the basic no-fault benefits paid to Connie by plaintiff.

IT IS ORDERED that defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is GRANTED, and that plaintiff have judgment against the defendant in the amount of $10,473.43.