**NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, Plaintiff,**

v.

**NODAK MUTUAL INSURANCE COMPANY, Defendant.**

No. A3–81–56.

United States District Court, D. North Dakota, Southeastern Division.

Dec. 29, 1981.

50 U.S.L.W. 2196 (3d Cir. Oct. 6, 1981). This Court is of course constrained by Second Circuit law.

Carlton J. Hunke, Vogel Law Firm, Fargo, N. D., for plaintiff.

Duane H. Ilvedson, Nilles Law Firm, Fargo, N. D., for defendant.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

The above entitled diversity action arises out of payments made by plaintiff to its insured, Joseph Henkenius, pursuant to an automobile insurance policy conforming with the North Dakota Auto Accident Reparations Act (the no-fault law), N.D.Cent. Code ch. 26–41. Plaintiff seeks to recover payments made to Joseph Henkenius, contending that defendant is primarily liable for the payments.

The parties have filed cross motions for summary judgment. As there are no material facts in issue, this procedure is an appropriate device for disposition of this case. Fed.R.Civ.P. 56.

The pertinent facts are as follows. On June 19, 1980, Joseph Henkenius was a passenger in a car owned and operated by Adolph Henkenius. Joseph and Adolph were both residents of North Dakota; both owned vehicles which were licensed and registered in North Dakota; and both were insured pursuant to North Dakota's no-fault law. Joseph was insured by plaintiff, National Farmers Union Property and Casualty Company. Adolph was insured by defendant, Nodak Mutual Insurance Company. An accident occurred in Minnesota, at the intersection of Wilkin County Roads # 30 and # 3, and Joseph was seriously injured. As a result of the injuries, Joseph incurred medical bills in excess of $20,000 and also lost wages due to his inability to return to work. Plaintiff paid Joseph maximum no-fault benefits of $20,000.00 for medical expenses. Plaintiff also paid Joseph $1,740 for work-loss benefits. Plaintiff then sought reimbursement from defendant as the primary no-fault insurer, relying on this court's decision in an analogous situation, *National Farmers Union Property & Casualty Company v. Dairyland*

*Insurance Company*, 485 F.Supp. 1009 (D.N. D.1980) (*Dairyland*). Defendant has refused to pay plaintiff, asserting that *Dairyland* is inapplicable to the facts of this case. Plaintiff then filed the instant suit, essentially seeking subrogation under N.D.Cent. Code § 26–41–13.[1]

In the case at bar, as in *Dairyland*, the threshold question to be determined is whether the applicable law is that of Minnesota or North Dakota. Under Minnesota's no-fault law,[2] plaintiff, as the insurer of the injured person, would be required to compensate Joseph Henkenius. Minn.Stat. Ann. § 65B.47(4)(a).[3] Under North Dakota law, defendant, as the insurer of the secured motor vehicle, would be required to compensate Joseph Henkenius. N.D.Cent. Code §§ 26–41–07,[4] 26–41–10(2), *infra*. In *Dairyland*, this court determined that North Dakota had abandoned the *lex loci delecti* doctrine (which required application of the law of the place where the tort occurred) and adopted the significant contacts approach to choice of law questions in tort cases. The court further determined that

North Dakota would apply the significant contacts approach to contract cases as well. The court then found that all the significant contacts in the case were with North Dakota and applied North Dakota no-fault law to the facts.

■ In this case, as in *Dairyland*, significant contacts with North Dakota include: (1) both the injured party and the driver of the automobile were North Dakota residents in 1980; (2) the automobile involved in the accident was registered in North Dakota; and (3) the insurance policies in question were entered into, issued, and delivered in North Dakota. Additionally, Joseph's medical bills, which exceeded $20,000, were incurred in North Dakota. *See Issendorf v. Olson*, 194 N.W.2d 750, 755 (N.D. 1972) (loss of income and medical bills incurred are significant contacts which affect North Dakota's economy). The contacts with Minnesota include: (1) the accident occurred in Minnesota and (2) Joseph Henkenius' car was in storage in Minnesota. Though defendant places great weight on the latter fact,[5] the court finds that under

1. N.D.Cent.Code § 26–41–13 provides as follows:
   A basic no-fault insurer which has paid or may become obligated to pay basic no-fault ·benefits under this chapter shall be subrogated to the extent of its obligations to all of the rights of the injured person against any person or organization other than a secured person. The subrogee shall have a lien to the extent of its obligations, and no release of such rights shall be effective against such rights without the subrogee's consent.

2. Minnesota No-fault Automobile Insurance Act, Minn.Stat.Ann. §§ 65B.41–65B.71 (Supp. 1981).

3. Minn.Stat.Ann. § 65B.47(4)(a) provides as follows:
   Subd. 4. In all other cases, the following priorities apply:
   (a) The security for payment of basic economic loss benefits applicable to injury to an insured person is the security under which the injured person is an insured.

4. N.D.Cent.Code § 26–41–07 provides as follows:
   Each basic no-fault insurer of a secured vehicle shall pay basic no-fault benefits without regard to fault for economic loss resulting from:

1. Accidental bodily injury sustained within the United States of America, its territories or possessions, or Canada by the owner of the motor vehicle or any relative of the owner:
   a. While occupying any motor vehicle, or
   b. While a pedestrian as the result of being struck by a motor vehicle which, for the purpose of this subdivision, shall also include a motorcycle.
   2. Accidental bodily injury sustained by any other person while occupying the secured motor vehicle if the accident occurs within the United States of America, its territories or possessions, or Canada.
   3. Accidental bodily injury sustained by any other person as a result of being struck by the secured motor vehicle while a pedestrian in this state.

5. Defendant's position seems to be that because plaintiff paid Joseph the higher benefits provided under Minnesota law (as required by N.D.Cent.Code § 26–41–11(2), see footnote 6 *infra*, and Minn.Stat.Ann. § 65B.50, see footnote 8 *infra*), Minnesota's no-fault law should be applicable in determining which insurer is the primary insurer. This approach begs the question of which law applies. Further defendant's reliance on *Petty v. Allstate Insurance Company*, 290 N.W.2d 763 (Minn.1980) is misplaced. In *Petty*, two California residents were

the significant contacts approach, North Dakota law applies. *See Dairyland, supra* at 1011.

In a situation where the driver of the vehicle and the injured occupant of the vehicle are each separately insured, N.D. Cent.Code § 26–41–10 determines the priority of applicable security. Specifically, § 26–41–10(2)(a), which provides as follows, is applicable:

> 2. As between applicable security basic no-fault benefits shall be payable as follows:
>
> a. As to any person injured while occupying a secured motor vehicle, or injured as a pedestrian by a secured motor vehicle, *the benefits shall be payable by the basic no-fault insurer of the secured motor vehicle.*

N.D.Cent.Code § 26–41–10(2)(a) (emphasis added).

Because defendant is the "basic no-fault insurer of the secured motor vehicle," defendant is primarily liable for the basic no-fault benefits plaintiff paid to the injured occupant, Joseph Henkenius.

■ The parties concede that because the accident occurred in Minnesota, the primary insurer must provide benefits as required under Minnesota law, as Minnesota's no-fault benefits exceed those required under North Dakota law. N.D.Cent.Code § 26–41–11(2).[6] Under North Dakota law, basic no-fault benefits provide a maximum of $15,000. N.D.Cent.Code § 26–41–03(2).[7] Under Minnesota law, basic no fault benefits provide a maximum of $30,000 ($20,000 for medical expenses and $10,000 for income loss, replacement service loss, and survivors replacement services loss). Minn.Stat.Ann. § 65B.44.

■ Defendant asserts it is unfair to require it to pay the higher Minnesota benefits while applying North Dakota priority law. When an insurance company doing business in several states writes a policy on an automobile, the company knows the automobile is a moveable item which will be driven from state to state. The company accepts the risk that the insured may be subject to liability not only in the state where the policy is written, but in other states as well. *Hague v. Allstate Insurance Company*, 289 N.W.2d 43, 50 (Minn.1979). Defendant has complied with Minn.Stat. Ann. § 65B.50,[8] certifying that every con-

involved in a car accident in Minnesota and Minnesota no-fault law was applied to allow "stacking" of two California insurance policies. The case is inapposite because California does not provide no fault insurance and the conflicts of law question was never raised.

6. N.D.Cent.Code § 26–41–11(2) provides as follows:

2. If the accident occurs outside this state but within the United States of America, its territories or possessions, or Canada:

a. The limits of liability of the financial responsibility or compulsory insurance laws of the applicable jurisdiction exceed the limits of liability of the financial responsibility laws of North Dakota, such motor vehicle liability insurance shall be deemed to comply with the limits of liability of the laws of the applicable jurisdiction.

7. N.D.Cent.Code § 26–41–03(2) provides as follows:

2. "Basic no-fault benefits" means benefits for economic loss resulting from accidental bodily injury. The maximum amount of basic no-fault benefits payable for all economic loss incurred and resulting from accidental bodily injury to any one person as the result

of any one accident shall not exceed fifteen thousand dollars, regardless of the number of persons entitled to such benefits or the number of basic no-fault insurers obligated to pay such benefits. Basic no-fault benefits payable shall not exceed one hundred and fifty dollars per work week per person prorated for any lesser period for work loss or survivors income loss, or one thousand dollars for funeral, cremation, and burial expenses.

8. Minn.Stat.Ann. § 65B.50 states as follows:

Subdivision 1. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least minimum security provided by section 65B.49 to all policyholders, except that in the case of nonresident policyholders it need only certify that security is provided with respect to accidents occurring in this state.

Subdivision 2. Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership,

tract of liability insurance for injury, wherever issued, includes a basic economic loss benefit coverage as required by § 65B.44(1) while the vehicle is in Minnesota, which further indicates defendant is aware of the risks that an insurance carrier covers on its automobile policies.

Plaintiff properly paid Joseph the maximum amount of $20,000 for medical expenses and $1,740 for income loss. Plaintiff is therefore entitled to reimbursement from defendant in the amount of $21,740.00, plus interest at the legal rate as provided by N.D.Cent.Code § 47–14–05, from November 12, 1980.

It appears from the record that plaintiff paid the policy benefits to the insured on November 12, 1980. Plaintiff is asking the court to require defendant to pay interest on the sum of $21,740 from November 12, 1980 at the rate of 18%, arguing that the intent of N.D.Cent.Code § 26–41–09(2) requires interest at that rate. There is nothing in the record to show that any interest was paid to the insured and on its subrogation claim plaintiff will be allowed the legal rate.

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted, and that plaintiff have judgment against defendant in the amount of $21,740.00 plus interest at the legal rate of 6% from November 12, 1980 to date of judgment.

maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle.