Clifford ISSENDORF, Plaintiff and Appellant,

v.

Michael OLSON, Defendant and Respondent.

Civ. No. 8775.

Supreme Court of North Dakota.

Feb. 8, 1972.

Lamb & Schaefer, Moorhead, Minn., and Wegner, Fraase & Cooke, Fargo, for plaintiff and appellant.

Wattam, Vogel, Vogel & Peterson, Fargo, for defendant and respondent.

ERICKSTAD, Judge.

The basic issue we are asked to determine in this case is whether the trial court erred in refusing to instruct a North Dakota jury on the Minnesota law of comparative negligence in a personal injury action brought by a resident of North Dakota who, as a passenger in an automobile owned and operated by a resident of this state, received personal injuries in an accident which occurred on a highway in the state of Minnesota. For the reasons stated in this opinion, we conclude that the trial court did not err in refusing to so instruct the jury.

The action was initiated in Cass County district court by summons and complaint dated June 6, 1968. Note of issue, dated March 10, 1969, signed by counsel for the plaintiff, discloses that issues of law and fact were joined as of June 26, 1968. A motion on the part of the plaintiff to amend his complaint to increase the amount alleged to have been expended for medical expenses, and to add a paragraph to the complaint relative to permanent injuries and damages resulting therefrom, was noticed for hearing May 1, 1969. By order dated September 12, 1969, the Honorable Roy K. Redetzke granted the motion to amend the complaint and set the case over to the next regular term of the district court.

By motion dated September 11, 1969, the plaintiff moved to strike paragraph 2 of the defendant's answer, which asserted that at the time of the accident the plaintiff was a guest-passenger riding in the defendant's automobile, and that under the applicable North Dakota Guest Statute the plaintiff was entitled to recover nothing. This motion to strike was also granted by order dated September 12, 1969.

The case came on for trial before the Honorable Ralph B. Maxwell, another judge of the district court of Cass County, in November 1969. The trial judge, in instructing the members of the jury, advised them of the defenses of contributory negligence and assumption of risk pleaded by the defendant and their applicability under North Dakota law. He did this over the objection of the plaintiff, who contended that the court should instruct the jury on the basis of the Minnesota statute on comparative negligence which became effective on July 1, 1969, in any action the trial of which commenced after July 1, 1969. It was the plaintiff's contention that the separate defenses of contributory negligence and assumption of risk as defined in the trial court's instructions were incompatible with the comparative-negligence statute of Minnesota.

Ruling on a motion for new trial following the jury's verdict of dismissal of the plaintiff's action, the court denied the motion on the ground that that part of the Minnesota statute which establishes when the law should become effective is remedial only and therefore not binding upon a court of this State.

The pertinent Minnesota statute reads:

"Section 1. [604.01] Comparative negligence; contributory negligence; effect. Subdivision 1. Scope of application. Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in

proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award.

\* \* \* \* \* \*

"Sec. 2. This act shall be effective in any action the trial of which is commenced after July 1, 1969." Session Laws of Minnesota for 1969, Chapter 624, H. F. No. 380, pages 1069, 1070.

In 1957, before the advent of Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963), a New York court of appeals decision which established the significant-contacts or center-of-gravity rule as the choice-of-law rule to be applied in tort litigation, our court in Pearson v. Erb, 82 N.W.2d 818 (N.D.1957), applied the traditional rule for determining choice of law in tort cases, *lex loci delicti,* the law of the place where the wrong occurred.

In *Pearson,* this court said:

"The accident having happened in the State of Minnesota, the liabilities of the parties must be determined according to laws of that state. Cyclopedia of Automobile Law and Practice, Blashfield, Volume 9, Section 5791.

" 'The question whether conduct which caused damage was negligent, so as to make the one guilty of it liable for a wrong, is determined by the law of the place where the act or omission claimed to be the cause of the damage took place.' The Conflict of Laws, Beale, Volume 2, Section 379.1.

" 'Whether contributory negligence of the plaintiff is a defence, in whole or in part, to an action for a negligent injury depends upon the law of the place of the injury.' The Conflict of Laws, Beale, Volume 2, Section 385.1." Pearson v. Erb, 82 N.W.2d 818, 821, 822 (N.D.1957).

Respect for the judicial doctrine of *stare decisis* no doubt caused Judge Fuld in *Bab-* *cock* to explain the necessity for a new choice-of-law rule. We quote him:

"The traditional choice of law rule, embodied in the original Restatement of Conflict of Laws (§ 384), and until recently unquestioningly followed in this court \* \* \*, has been that the substantive rights and liabilities arising out of a tortious occurrence are determinable by the law of the place of the tort. \* \* \* It had its conceptual foundation in the vested rights doctrine, namely, that a right to recover for a foreign tort owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and extent solely on such law. \* \* \* Although espoused by such great figures as Justice HOLMES \* \* \* and Professor Beale \* \* \*, the vested rights doctrine has long since been discredited because it fails to take account of underlying policy considerations in evaluating the significance to be ascribed to the circumstance that an act had a foreign situs in determining the rights and liabilities which arise out of that act. 'The vice of the vested rights theory', it has been aptly stated, 'is that it affects to decide concrete cases upon generalities which do not state the practical considerations involved'. (Yntema, The Hornbook Method and the Conflict of Laws, 37 Yale L.J. 468, 482–483.) More particularly, as applied to torts, the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues. It is for this very reason that, despite the advantages of certainty, ease of application and predictability which it affords \* \* \*, there has in recent years been increasing criticism of the traditional rule by commentators and a judicial trend towards its abandonment or modification." Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 746, 191 N.E.2d 279, 281, 95 A.L.R.2d 1 (1963).

In breaking with the past, Judge Fuld said:

"Justice, fairness and 'the best practical result' (Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 141, 19 N.E.2d 992, 995, supra) may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that 'it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context' and thereby allows the forum to apply 'the policy of the jurisdiction "most intimately concerned with the outcome of [the] particular litigation".' (Auten v. Auten, 308 N.Y. 155, 161, 124 N.E.2d 99, 102, supra.)" Babcock v. Jackson, *supra,* 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283.

The supreme court of Rhode Island in 1968, in discarding the *lex loci delicti* doctrine for the significant-contact approach, noted that court after court since the late fifties has adopted some aspect of this interest-weighing approach to the choice of law in tort cases. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279, 95 A.L.R.2d 1 (1963); Thompson v. Thompson, 105 N.H. 86, 193 A.2d 439, 96 A.L.R.2d 969 (1963); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964); Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965); Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965); Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Myers v. Gaither, D.C.App., 232 A.2d 577 (1967); Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); Casey v. Manson Construction & Engineering Co., 247 Or. 274, 428 P.2d 898 (1968); Woodward v. Stewart, 104 R.I. 290, 243 A.2d 917, 922 (1968).

Making a choice-of-law decision depend upon whether the law is substantive or procedural in nature is also an unsatisfactory approach to the determination of the choice of law in tort cases.

Pertinent is what the supreme court of Rhode Island said about this approach in *Woodward,* in discussing the development of the *lex loci delicti* doctrine.

"Very early within the development of that doctrine, it became well recognized by the courts and text writers that a forum in a conflicts situation was free to apply its own procedural rules to rights and liabilities arising under the substantive laws of a foreign jurisdiction. Litigants' rights were not entirely controlled by the law of the place where the tort occurred, and the results and applicable law were not always easily predictable. Courts found that labeling a matter as substantive or procedural, was often a subjective determination to be made by the forum court, and the guidelines used in making such determinations were not very often open to objective classification or criticism. Thus, when a court met a hard case in which it had to decide whether a particular matter was substantive or procedural—and there was a serious question raised as to which label to apply—the courts found that they had considerable latitude to characterize the matter as procedural and govern the case by the law of the forum.

"Furthermore, if a forum confronted a hard case and there was no rationale upon which the controlling matters could be labeled as procedural, it could always apply the rule that it is not constitutionally obligated to give full faith and credit to a foreign jurisdiction's laws if to do so would violate some 'public policy' of the forum state." Woodward v. Stewart, 104 R.I. 290, 243 A.2d 917, 920, 921 (1968), *petition for cert. dismissed* 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968).

In abandoning the old choice-of-law rule, the Rhode Island court considered the interests that should be weighed in deciding which jurisdiction has the more significant

interest with reference to a particular issue and, following Wisconsin and New Hampshire, adopted the guidelines enunciated by Dean Leflar.

Dean Leflar's choice-influencing factors are:

"A. Predictability of results;

"B. Maintenance of interstate and international order;

"C. Simplification of the judicial task;

"D. Advancement of the forum's governmental interests;

"E. Application of the better rule of law."

Leflar, 41 N.Y.U.L.Rev. 267, 282 (1966).

In *Woodward*, in applying the substantive law of Rhode Island to a tort case in which the accident occurred in Massachusetts, the Rhode Island court said:

" * * * All the interest factors, other than the fortuitous locus of the accident, point to the application of Rhode Island law. All the parties involved were Rhode Island residents, their trip started in Rhode Island and was to end in Rhode Island, the guest-host relationship arose in Rhode Island and suit was commenced in Rhode Island. Massachusetts, therefore, would appear to have no interest in the outcome of this case other than how it might impinge on that commonwealth's determination of what constitutes negligent operation of motor vehicles on its highways. Accordingly the defendants' alleged wrongful conduct is to be judged by the law of Massachusetts, but the host's duty of care to his passengers and the measure of damages to be applied are to be governed by the law of Rhode Island." Woodward v. Stewart, *supra*, 243 A.2d 917, 923, 924.

Whether the contributory-negligence rule of the forum or the comparative negligence law of the place of the wrong should apply is an issue similar to that in *Woodward*, where the question was whether New York's policy as the forum of requiring a tortfeasor to compensate his guest for injuries caused by his negligence or Ontario's restrictive guest law should apply.

Most of the interest factors point to the application of North Dakota law. Although we have before us only a partial transcript of the trial court proceedings, we note from the brief filed by the defendant with the trial court on the plaintiff's motion to strike from the answer the defense of the North Dakota Guest Law the following facts: The plaintiff was a resident of North Dakota at the time of the accident; his loss of income and the medical bills he incurred all affect North Dakota's economy; the vehicle in which he was riding at the time of the accident was registered and garaged in North Dakota, was insured under North Dakota rates, and was driven by a North Dakota resident; the trip in which the accident occurred originated in North Dakota, was to terminate there, and therefore the host-guest relationship originated in North Dakota.

The brief of the plaintiff in support of the motion lists these factors as pointing to Minnesota law: The accident occurred in Minnesota; the defendant chose to use Minnesota highways to travel from the F– M Hotel to the Bowler, when he could have used North Dakota highways almost exclusively; the defendant made the decision to demonstrate acceleration of his automobile while driving in Minnesota; the injuries to the plaintiff were sustained in Minnesota; and the accident was investigated and a report was filed by a Minnesota law-enforcement officer.

■ We believe the contacts with North Dakota are much more significant than those with Minnesota. The contacts with Minnesota are minimal. The locus of the accident was fortuitous, having resulted from a brief journey into Minnesota for food, beverage, and entertainment.

Although we are not particularly enamored with our rule of contributory negli-

gence, and thus are not saying that it is a better rule of law than the Minnesota law of comparative negligence, we believe that the significant contacts in this case are with this State and that accordingly our substantive law should be applied to this case.

We adopt with this case the significant-contacts approach as the choice of law and abandon the *lex loci delicti* doctrine. Applying the significant-contacts approach and noting that the significant contacts in this case point to the law of North Dakota, and applying the law of North Dakota to the instant case, we find that the trial court was correct in instructing the jury on the North Dakota rules of contributory negligence and assumption of risk and also correct in refusing to instruct the jury on the Minnesota law of comparative negligence.

For the reasons stated in this opinion, we affirm the order denying the new trial.

STRUTZ, C. J., and PAULSON, TEIGEN, and KNUDSON, JJ., concur.