Scott BARRY, Plaintiff,

v.

BAKER ELECTRIC COOPERATIVE, INC., and Maier Engineering, Inc., Defendants and Appellants.

BAKER ELECTRIC COOPERATIVE, INC., and Maier Engineering, Inc., Defendants, Third-Party Plaintiffs and Appellants,

v.

BARRY CONSTRUCTION CO., Third-Party Defendant and Appellee.

Civ. Nos. 10658, 10659.

Supreme Court of North Dakota.

July 27, 1984.

Dosland, Dosland & Nordhougen, Moorhead, Minn., for Scott Barry; no appearance.

Pringle & Herigstad, Minot, for appellant Baker Elec.; argued by Mitchell Mahoney, Minot.

Solberg, Stewart, Boulger & Miller, Fargo, for appellant Maier Engineering; no appearance.

Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minn., for appellee Barry Const.; argued by Dean Hoistad, Moorhead, Minn.

SAND, Justice.

Baker Electric Cooperative, Inc. (Baker) and Maier Engineering, Inc. (Maier) appealed from a summary judgment dismissing Barry Construction Co. (Barry Construction), a third-party defendant, from an action initially brought by Scott Barry (Scott) seeking damages for injuries he sustained in a construction accident.

In 1978 Baker and Barry Construction entered into an electrical construction contract to be performed in North Dakota in which Maier, an engineering firm, was the supervising engineer. The principal place of business for Baker and Maier is North Dakota. Barry Construction's main office is located in Lake Wilson, Minnesota.

On 2 August 1979 Scott, an employee of Barry Construction and a resident of Lake Wilson, while working on an electrical utility pole owned by Baker near Cando, was injured in an accident arising out of and in the course of employment.

Barry Construction, as required by NDCC § 65–01–05, contributed to the North Dakota Workmen's Compensation Fund and had secured workmen's compensation coverage from the North Dakota Workmen's Compensation Bureau. Barry Construction also had workmen's compensation with a private insurance carrier under Minnesota law, which also permitted coverage for accidents occurring outside Minnesota.

The parties agreed that at the time of the accident Scott could have requested benefits from either the North Dakota Workmen's Compensation Bureau or the private

insurance carrier providing coverage under Minnesota law. Scott chose to recover under the Minnesota coverage.

After receiving workmen's compensation benefits under the Minnesota Act, Scott filed this action against Baker and Maier for the damages resulting from his injuries. Baker and Maier then filed a third-party action against Barry Construction seeking contribution for its percentage of the negligence in the accident which injured Scott. Barry Construction then filed a motion for summary judgment alleging that North Dakota's Workmen's Compensation Act barred an action for contribution against it for injuries sustained by its employee. The district court granted Barry Construction's motion for summary judgment on those grounds and dismissed it from the action. Baker Electric and Maier Engineering appealed.

■ Summary judgment is appropriate if no dispute as to either the material facts or the inferences to be drawn from the undisputed facts exists, or if only a question of law is involved. *Spier v. Power Concrete, Inc.*, 304 N.W.2d 68, 72 (1981). This case comes within the above concepts.

■ Under North Dakota law, the workmen's compensation act (NDCC § 65–01–08 et seq.) operates to foreclose an employer's liability for contribution to a third-party tortfeasor, irrespective of the joint tortfeasor contribution act, NDCC Chapter 32–38. *Layman v. Braunschweigische Maschinenbauanstalt*, 343 N.W.2d 334, 344 (1983); see also *Gernand v. Ost Services, Inc.*, 298 N.W.2d 500, 505 (N.D.1980). However, under Minnesota law, a third-party tortfeasor sued by an employee can maintain an action for contribution against the employer for an amount proportional to its percent of negligence, but not exceeding its total workmen's compensation liability to the employee. *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679, 689 (1977).

Baker Electric and Maier Engineering contend their third-party action against Barry Construction for indemnity or contri-

bution was proper and should not have been dismissed. In support of their position they cited *Issendorf, infra*, and *Lambertson, supra*. In opposition, Barry Construction cited *Breitwieser, infra*. Each party argued that the principles of its cited cases applied. As will be noted later herein, neither *Issendorf* nor *Breitwieser* has any significant impact on workmen's compensation acts.

The underlying basic issue is whether the North Dakota Workmen's Compensation Act granting immunity to a complying employer or the Minnesota law permitting recovery from an employer on a percentage of negligence applies under the facts of this case where the employee applied for and received benefits under the Minnesota coverage. To resolve the issue we will briefly review the applicable North Dakota statutes, appropriate case law, including conflicts of workmen's compensation laws, and treatise by Larson on the subject.

The primary objective of the North Dakota Workmen's Compensation Law, NDCC Chapter 65, is stated in NDCC § 65–01–01 which provides:

"The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workmen injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title."

■ The purpose of the North Dakota workmen's compensation program is to provide sure and prompt relief for the worker and, in return, the employer and employee forfeit certain common-law rights to achieve the objective. *Breitwieser v. State*, 62 N.W.2d 900, 902 (N.D.1954). This

purpose is in complete harmony with the objective of Longshoremen's Harbor Worker's Compensation Act, which was tacitly approved by the United States Supreme Court. See *Washington Metropolitan Area Transit Authority v. Johnson,* —— U.S. ——, 104 S.Ct. 2827, 81 L.Ed.2d 768, 1984.

To accomplish its goals and objectives appropriate legislation was enacted.

NDCC § 65–01–05 requires every employer to secure coverage. It provides:

"It shall be unlawful for any employer to employ anyone, or to receive the fruits of the labor of any person, in a hazardous employment as defined in this title, without first making application for workmen's compensation insurance coverage for the protection of such employees by notice to the bureau of the intended employment, the nature thereof, and the estimated payroll expenditure for the coming twelve-month period. Failure to secure workmen's compensation coverage for employees by application for workmen's compensation insurance shall constitute a class A misdemeanor. Where the employer is a corporation, the president, secretary, treasurer, or person with primary responsibility shall be liable for the failure to secure workmen's compensation coverage under this section. In addition to the penalties prescribed above the bureau may, by injunction proceedings as provided for in this title, enjoin any employer from unlawfully employing uninsured workers."

Failure to comply constitutes a class A misdemeanor which is punishable by imprisonment for one year or a fine of $1,000.00, or both. NDCC § 12.1–32–01.

A contributing (complying) employer under NDCC § 65–01–08 is relieved from liability for damages to an injured employee. It provides:

"Where a local or out of state employer has secured the payment of compensation to his employees by contributing premiums to the fund, the employee ... shall have no right of action against such contributing employer or against any agent, servant, or other employee of such employer for damages for personal injuries, but shall look solely to the fund for compensation."

Further, NDCC § 65–08–02, concerning reciprocity in extra-territorial application of compensation acts of various states provides, in pertinent part:

"The benefits under the Workmen's Compensation Act or similar laws of the other state, or other remedies under a like Act or laws are the exclusive remedy against the employer for any resulting injury or death suffered by such employee while working for that employer in the state of North Dakota."

See also NDCC § 65–04–28 (contributing employers not liable for injuries to or deaths of employees); NDCC § 65–05–06 (payment of compensation by bureau in lieu of action against employer).

■ The foregoing sections refer to what is commonly known as the exclusive remedy rule in workmen's compensation law. *Gernand v. Ost Services, Inc.,* 298 N.W.2d 500, 504 (N.D.1980). Thus, North Dakota's workmen's compensation statutes "provide an exclusive, compulsory, and comprehensive program designed to compensate workers for injuries received in the course of their employment." *United States, Etc. v. North Dakota Workmen's,* 275 N.W.2d 618, 620 (N.D.1979).

In *Breitwieser v. State,* 62 N.W.2d 900 (N.D.1954), the employer, the University of North Dakota, had secured North Dakota workmen's compensation coverage as required by law and also secured extraterritorial coverage with the North Dakota bureau. Breitwieser, an employee, was killed in an airplane crash in Minnesota, whose wrongful death statute allowed $10,000.00 to the next of kin and dependents. The widow applied for North Dakota benefits and settled with the airlines for $10,000.00. Our court held that the bureau was subrogated to only that portion of the $10,000.00 that went to the widow under Minnesota law.

The court said:

"The rights conferred on employers and employees under workmen's compensation statutes are controlled by the statutes of the state of the primary employment. [Citations omitted.]" 62 N.W.2d at 903.

The court also said:

"All the matters pertaining to the right of recovery for wrongful death are controlled by the laws of the state where the cause of action arose. Where an injury has been suffered in a sister state the laws of that state govern to the extent of the remedy." 62 N.W.2d at 904.

The major dispute in *Breitwieser* involved the resolution whether the wrongful death statute of Minnesota or North Dakota applied. Under Minnesota law the widow, where other heirs are involved, received one-third (same as intestate distribution in Minnesota). In North Dakota the judge determines the share each heir is to receive (§ 32–21–04). Our court held that Minnesota's wrongful death statute applied because the death occurred there and, accordingly, the bureau was subrogated to the one-third recovery. What would have been the situation, either now or then, if Minnesota did not have a "wrongful death statute"? Would the North Dakota wrongful death statute have been applicable? Fortunately, we are not required to answer this hypothetical question.

Our court, in substance, gave full recognition to the Minnesota wrongful death act, including the distribution thereunder, and, at the same time, gave full recognition to the North Dakota workmen's compensation subrogation provision.

In *Issendorf v. Olson*, 194 N.W.2d 750, 756 (N.D.1972), a case not involving the workmen's compensation act, our court abandoned the *lex loci delecti* doctrine and adopted the "significant contacts" rule for tort litigation involving a conflict of laws. This rule "gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." 194 N.W.2d at 754. (Citations omitted.)

In *National Farmers, Etc. v. Dairyland Ins. Co.*, 485 F.Supp. 1009 (N.D.Dist.1980), the court, after noting that NDCC § 9–07–11 was repealed in 1973 without a replacement, applied the significant contacts rule adopted by this court in *Issendorf* to conflicts of law on contracts involving no fault insurance. The same result was also reached in *National Farmers Union v. Nodak Mutual Ins.*, 528 F.Supp. 1093 (N.D.Dist.1981).

In *Olson v. American Oil Co.*, 474 F.Supp. 560 (N.D.Dist.1978) (affirmed in 604 F.2d 26 on basis of the district court opinion), the court had under consideration a factual situation similar to the instant case involving the workmen's compensation acts of North Dakota and Minnesota. The employer, American Oil Company, had secured North Dakota workmen's compensation coverage. Due to special circumstances, the employer provided coverage for its employees in North Dakota and Minnesota. The injured employee, Olson, chose to collect under Minnesota compensation laws and, after recovering over $20,000.00, thereafter brought an action against the employer and a co-employee.

The court, after noting the provisions of NDCC §§ 65–01–01 and 65–01–08, concluded that the sole remedy of the injured employee Olson was under the North Dakota Workmen's Compensation Act; and that the employee's election to file for benefits under the Minnesota Workmen's Compensation Act and not to file for benefits under the North Dakota Workmen's Compensation Act did not defeat immunity granted to the employer and to the employee under § 65–01–08.

The court specifically concluded:

"Even if Mr. Olson had not been covered by North Dakota Workmen's Compensation,[1] I would reach the same result

---

**1.** NDCC Section 65–09–02 provides that an injured employee has the option to apply and

receive benefits under the Act rather than pursue a civil tort action against a non-complying

under the provisions of the Full Faith and Credit Clause, Article IV, § 1 of the United States Constitution, which provides as follows:

> " 'Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.'

"The United States Supreme Court, in *Bradford Electric Light Co. v. Clapper,* 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932), held that a sister state must give recognition to the workmen's compensation statutes of another state unless the provisions of the other state's workmen's compensation statutes are obnoxious to the public policy of the forum state. See *Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); *Pacific Employers Insurance Co. v. Industrial Accident Commission,* 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939).

"I find nothing obnoxious to the public policy of the state of North Dakota in the Minnesota Workmen's Compensation Law in this situation. This problem has been discussed and the same conclusion reached in *Trautman v. Standard Oil Co. of Indiana,* 263 N.W.2d 809 (Minn. 1978). The supreme courts of both Minnesota and North Dakota have held that determinations of state workmen's compensation commissions are final decisions entitled to res judicata effect. See *Brix v. General Accident and Assurance Corp.,* 254 Minn. 21, 93 N.W.2d 542 (1958); *Stine v. Weiner,* 238 N.W.2d 918 (N.D.1976). Thus, the filing for and collection of workmen's compensation benefits under Minnesota law is entitled to full faith and credit by a federal district court bound to apply the substantive law of North Dakota, preventing this subsequent common-law action." *Olson v.*

employer who would be deprived of the common-law defenses. *Shaughnessy v. Bohnet,* 303 N.W.2d 337 (N.D.1981) and *Kempel v. Streich,*

*American Oil Co.,* 474 F.Supp. at 562–563.

In *Bradford Electric Light Co. v. Clapper,* 286 U.S. 145, 160, 52 S.Ct. 571, 576, 76 L.Ed. 1026, 1036 (1932), involving workmen's compensation laws, the court said: "A State may, on occasion, decline to enforce a foreign cause of action. In so doing, it merely denies a remedy, leaving unimpaired the plaintiff's substantive right, so that he is free to enforce it elsewhere. But to refuse to give effect to a substantive defense under the applicable law of another State, as under the circumstances here presented, subjects the defendant to irremediable liability. This may not be done. [Citation omitted.]"

This concept or principle is still in full force and effect.

*Alaska Packers Asso. v. Industrial Accident Commission,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935), involving workmen's compensation, concluded that legitimate state interest must prevail.

*Pacific Employers Ins. Co. v. Industrial Accident Commission,* 306 U.S. 493, 504, 59 S.Ct. 629, 634, 83 L.Ed. 940, 946 (1939) allowed the compensation act of the place of injury in course of employment to override the compensation act of the employee's home state. The court said:

> "Full faith and credit does not here enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it."

*Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), concluded that the full faith and credit clause does not require the state of injury to apply its state's prohibiting provision.

In *Collins v. American Busline, Inc.,* 350 U.S. 528, 76 S.Ct. 582, 100 L.Ed. 672 (1956), a bus driver resident of California was injured in Arizona on a regular run.

196 N.W.2d 589 (N.D.1972). See also NDCC Section 65–09–04 regarding the payment of premiums and penalties.

The court held that state law affording remedies for injuries sustained within its boundaries applied.

We also note that Vol. 4, Larson, Workmen's Compensation Law, Section 86.10, sets out six grounds on which the applicability of a particular compensation act has been asserted; they are that the local state is the:

(1) Place where injury occurred;

(2) Place of making the contract;

(3) Place where the employment relation exists or is carried out;

(4) Place where the industry is localized;

(5) Place where employee resides; or

(6) Place whose statutes the parties expressly adopted by contract.

The author then commented that whenever one of these falls within the local state, and some or all of the others occur in another state, the question arises if the local state may apply its statute without being accused of denying full faith and credit to the statute of another.

As matters now stand, it is clear that the state which was the *locus* of any one of the first three items—contract, injury, employment—and probably also of the next two—employee residence and business localization—can constitutionally apply its statute if it wants to.

The author in 2A Larson Section 76.20 states that a great majority of jurisdictions have held that a complying employer, where concurring negligence contributed to employee's injury, cannot be sued or joined by a third party as a joint tortfeasor, whether under contribution statutes or common law. The employer is not jointly liable to the employee in tort and, therefore, cannot be a joint tortfeasor. The author also states that nothing in the comparative negligence laws implies any intention to alter the fundamental exclusiveness of the compensation liability. This principle was followed in *Layman* and *Gernand*, *supra*.

After having reviewed the applicable case law we are convinced that the basic issue involves more than merely determining whether the *Breitwieser* or *Issendorf* doctrine applies. Workmen's compensation actions, only in some limited respects, are comparable to actions founded in tort. The statutory provisions of the workmen's compensation acts are in themselves the major items to be considered and will be determinative in many respects. In some instances the factual situation may bring into focus the laws of the two states, at which time the constitutional concepts of full faith and credit must be considered in resolving the conflicts of law issue. Invariably "significant contacts" are factors to be taken into account. In this respect, workmen's compensation actions involve legal concepts which identify with the significant contacts rule. They frequently employ some or similar items as those involved in the "significant contacts rule," but place different emphasis on each. This is illustrated by the "six grounds" enumerated by Larson. The emphasis, out of necessity, depends to a degree upon the respective statutes involved and the constitutional full faith and credit requirement if a conflict of law exists.

■ A summary of the undisputed facts discloses that Scott Barry and Barry Construction claim Minnesota as their residences; however, between 1977 and the time of the accident, Scott Barry also worked for Barry Construction in Omaha and Funk, Nebraska, Carrington and Cando, North Dakota, and Baudette, Minnesota. Thus, Scott Barry's employment relationship cannot be described as solely a Minnesota based contract of employment. Further, the site of the injury and the place where the conduct causing the injury occurred are in North Dakota. Baker's notice for bids specified that the bids be submitted to its office at Cando, North Dakota. Pursuant to statement made in oral argument, the contract between Barry Construction, Baker and Maier was negotiated, prepared and executed in North Dakota. Finally, appellants Baker and Maier are both North Dakota based corporations.

Under these facts, after considering the foregoing case law and authorities, we con-

clude that North Dakota law applies under either *Breitwieser* or *Issendorf* case law or the six grounds enumerated by Larson. Consequently, we are not required to determine which doctrine supersedes or prevails over the other.

Appellants further argued that because Scott applied for and received Minnesota benefits, even if North Dakota law otherwise applied, equitable considerations require that we adopt the rationale of *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977) and, in effect, overrule previous decisions in order to permit contribution by the employer to third-party defendants. We are not persuaded.

■ Under the rationale of the United States Supreme Court decisions involving conflicts of law cited earlier herein, and under the facts of this case, North Dakota need not apply the Minnesota workmen's compensation law under the full faith and credit clause of the United States Constitution.

Furthermore, if Scott's contentions or argument were valid, then the North Dakota workmen's compensation statutes would not only be nullified but every North Dakota employer who employs out-of-state employees in North Dakota and secures extraterritorial coverage would subject himself to the laws of the residence of the out-of-state employee if the employee sustained a compensable injury and applied for benefits in the resident state.

■ As noted earlier, North Dakota has a long-standing and strong public policy interest in making workmen's compensation the exclusive remedy against an employer in the case of an injured employee. Application of *Lambertson*, even if limited in scope, would be inimical to that public policy. An employee's choice of benefits is insufficient justification to alter North Dakota's guaranty of protection to employers contributing to North Dakota workmen's fund.

■ In resolving the issue under consideration we did not disregard the provisions of § 65–01–05 which subjects any employer receiving the fruits of labor in hazardous employment, as defined in the Act, to a criminal penalty for failing to first acquire workmen's compensation cover-age.[2] We do not believe that the State of North Dakota, under the threat of criminal sanction, intended to exact a premium for coverage, may, and at the same time, deny the immunity to the complying employer. To exact such premium but not provide the concomitant immunity to the employer would constitute fraud. We note that § 65–08–02, in pertinent part, provides:

"If the annual payroll expended within North Dakota by a nonresident employer exceeds one thousand dollars then the out-of-state employer shall no longer be considered as operating in North Dakota on a temporary basis, unless there is an agreement between the North Dakota workmen's compensation bureau and a similar agency of the other state where the employer is a resident, and such agreement provides otherwise.

"The benefits under the Workmen's Compensation Act or similar laws of the other state, or other remedies under a like Act or laws are the exclusive remedy against the employer for any resulting injury or death suffered by such employee while working for that employer in the state of North Dakota."

No argument was presented regarding any agreement and we assume none exists.

For the reasons stated herein, we conclude the trial court properly dismissed the third-party action against Barry Construction. Accordingly, the summary judgment of the district court dismissing the third-party action is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and GIERKE, JJ., concur.

---

**2.** The reciprocal extraterritorial coverage for temporary employment does not apply if the out-of-state employer's annual payroll in North Dakota exceeded $1,000.00, unless an agreement is entered into between the appropriate parties.