Myron **POLENSKY** and Shawn Polensky, Plaintiffs,

v.

**CONTINENTAL CASUALTY COMPANY, CNA Companies, Continental Insurance Company, AmeriServe Transportation, Inc. and Randal Eggleston, Defendants.**

No. A1–05–051.

United States District Court,
D. North Dakota,
Southwestern Division.

Nov. 7, 2005.

Albert J. Hardy, Hardy Maus & Nordsven PC, Dickinson, ND, for Plaintiffs.

Stanley N. Wilkins, Kansas City, MO, John C. Kapsner, Vogel Law Firm, Bismarck, ND, for Defendants.

## ORDER GRANTING MOTION TO DISMISS OF DEFENDANTS' CONTINENTAL CASUALTY COMPANY, CNA COMPANIES, AND CONTINENTAL INSURANCE COMPANY

HOVLAND, Chief Judge.

Before the Court is Defendant Continental Casualty Company, CNA Companies, and Continental Insurance Company, "Motion to Dismiss" filed jointly on July 14, 2005. The Plaintiffs have filed a response opposing the motion. For the following reasons, the motion is granted.

### I. BACKGROUND

On April 14, 1999, Myron Polensky, a North Dakota resident, was injured when struck from behind by a semi-tractor and trailer owned by the defendant, AmeriServe Transportation, Inc. (AmeriServe) and driven by AmeriServe employee, defendant Randy Eggleston, on Interstate Highway I–94 in Morton County, North Dakota. *See* Complaint, ¶ 6. AmeriServe is a Nebraska corporation with its principal place of business in Texas. *See* Plaintiffs' Statement of Material Facts, ¶ 3; Defendants' Reply to Plaintiffs' Statement of Material Facts, ¶ 3. Eggleston is a Missouri resident licensed in Kansas. *See* Plaintiffs' Statement of Material Facts, ¶ 2. AmeriServe was insured by Continental Casualty Company, an Illinois corporation. *Id.* at ¶ 4.

As a result of the accident, Myron filed a negligence action in Federal District Court for the District of North Dakota on April 5, 2005, naming AmeriServe,[1] Eggleston, Continental Casualty Company, CNA Companies, and Continental Insurance Company as defendants. *See* Docket No. 1. Thereafter, on July 14, 2005, defendants Continental Casualty Company, CNA Companies, and Continental Insurance Company (collectively referred to as the "defendant insurance companies") jointly filed the present motion to dismiss.

## II. *LEGAL DISCUSSION*

The defendant insurance companies filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. "The standard for a district court to employ in ruling on a motion to dismiss is clear." *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir.2004). "A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir.1996)). "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "A motion to dismiss should be granted 'as a practical matter ... only in the unusual case in which there is some insuperable bar to relief.'" *Strand v. Diversified Collection Service, Inc.*, 380 F.3d

316, 317 (8th Cir.2004) (citing *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir.1995) (quoting *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir.1974))). It is clear that under the Federal Rules, it is not necessary to plead every fact with formalistic particularity. *BJC Health System v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir.2003). A pleading which sets forth a claim for relief shall contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a).

The defendant insurance companies seek dismissal because North Dakota law does not permit an injured party to bring a direct action against an insurance company, namely, Continental Casualty Company; and CNA Companies and Continental Insurance Company did not write the insurance policy at issue in this case and are no longer existing business entities. The Court will explore the propriety of a direct action in the present case.

 It is well-established that North Dakota law does not permit an "unfettered, direct cause of action against an insurance company." *Molzahn v. Allstate Ins. Co.*, 305 F.Supp.2d 1113, 1117 (D.N.D. 2004) (citing *Dvorak v. Am. Family*, 508 N.W.2d 329, 331 (N.D.1993) ("Absent a clause in the insurance contract bestowing the right to bring a direct action against the insurer, an injured party's claim must be asserted against the tortfeasor, not the tortfeasor's insurer.")). Nebraska law similarly provides as follows: "The Nebraska Supreme Court has stated, [A]s a general rule, there is no privity between an insured person and the tortfeasor's liability insurer. For this reason, direct actions against liability insurance carriers based on the negligence of the insured are

---

**1.** According to the complaint, AmeriServe filed for protection under Chapter 11 of the United States Bankruptcy Code on or about January 31, 2000. *See* Complaint, ¶ 11. Am-

eriServe's assets were sold as a part of that process and it is without property to satisfy a judgment. *Id.* at ¶¶ 12–13.

not permitted in Nebraska." *German Mut. Ins. Co. of Dodge County v. Federated Mut. Ins. Co.,* 606 N.W.2d 856, 859 (Neb.App.2000) (citing *Medical Protective Co. v. Schrein,* 255 Neb. 24, 582 N.W.2d 286, 290 (1998)).[2] However, Nebraska law allows direct actions under limited circumstances:

> § 44–508. **Liability insurance; automobiles; bankruptcy of insured; policy provisions; reciprocity.**
>
> The policies or contracts of insurance covering legal liability for injury to person or persons caused through the ownership, operation, use or maintenance of automobiles issued by any domestic or foreign company shall, if approved by the Department of Insurance, contain a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and, in case of such insolvency or bankruptcy, an action may be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer company.

Neb. Rev. St. § 44–508. Nebraska's narrow direct action statute "permits an insured party to bring a direct action against an automobile liability insurer in the event that the insured is insolvent or bankrupt." *Molina v. Am. Alternative Ins. Corp.,* 270 Neb. 218, 699 N.W.2d 415, 419 (2005). As previously stated, AmeriServe is bankrupt. Under the circumstances, Nebraska law would allow a direct action against the

defendant insurance companies, whereas North Dakota law would not.

■ The Court's exercise of jurisdiction over this dispute is predicated upon the parties diversity of citizenship pursuant to 28 U.S.C. § 1332. It is well-established that in diversity of citizenship cases, the district court must apply the choice of laws rules of the state in which it sits. *Perkins v. Clark Equip. Co.,* 823 F.2d 207, 208 (8th Cir.1987). Before engaging in such an analysis, the Court must determine whether Nebraska's direct action statute is substantive or procedural.

### A. SUBSTANTIVE VS. PROCEDURAL

■ It is equally well-established that under traditional choice of law principles, the law of the forum state governs on matters of procedure. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 778 n. 10, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (citing Restatement (Second) of Conflict of Laws § 122 (1971)); *see Am. Std. Life & Acc. Ins. Co. v. Speros,* 494 N.W.2d 599, 602 (N.D.1993) ("Matters of procedure and remedial rights are governed by the law of the forum where relief is sought."); *Am. Hardware Mut. Ins. Co. v. Dairyland Ins. Co.,* 304 N.W.2d 687, 689 n. 1 (N.D.1981) ("The court's procedural rules remain in effect even though foreign law is to govern resolution of substantive issues."). Characterizing direct action statutes as either procedural or substantive has long been recognized as problematic throughout the country. *State Trading Corp. of India*

---

2. The insurance policy between Continental Casualty Company and AmeriServe also includes the general prohibition against direct actions:

 **LEGAL ACTION AGAINST US**

 No one may bring a legal action against us under the Coverage Form until:

 a. There has been full compliance with all the terms of this Coverage Form; and

 b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

 Defendants' Ex. A.

*Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 414–15 (2d. Cir.1990) (citing Speidel, *Extraterritorial Assertion of the Direct Action Statute: Due Process, Full Faith and Credit and the Search for Governmental Interest,* 53 Nw. U.L.Rev. 179, 212–14 (1958); Note, *Direct–Action Statutes: Their Operational and Conflict–of–Law Problems,* 74 Harv. L.Rev. 357, 387–89 (1960)). Not surprisingly, some courts have found direct action statutes to be procedural, *see e.g., Moore v. United Services, Auto. Ass'n,* 808 F.2d 1147, 1153–54 (5th Cir.1987); *Dechand v. Ins. Co. of State of Pa.,* 732 F.Supp. 1120, 1122 (D.Kan.1990); *Davis v. Furlong,* 328 N.W.2d 150, 152–53 (Minn.1983); *Macey v. Crum,* 249 Ala. 249, 30 So.2d 666, 668 (1947), while others have found them to be substantive in nature. *See e.g., Skuld,* 921 F.2d 409, 416; *Collins v. Am. Auto. Ins. Co.,* 230 F.2d 416, 422 (2d. Cir.1956); *Allstate Ins. Co. v. Stanley,* 282 F.Supp.2d 1342, 1343 (M.D.Fla.2003); *Richards v. Select Ins. Co., Inc.,* 40 F.Supp.2d 163, 167–68 (S.D.N.Y.1999); *Oltarsh v. Aetna Ins. Co.,* 15 N.Y.2d 111, 256 N.Y.S.2d 577, 204 N.E.2d 622 (1965).

The question becomes whether the North Dakota Supreme Court would label the Nebraska direct action statute as substantive or procedural under North Dakota law. *See Doan v. Consumer Testing Lab., Inc.,* 2 F.Supp.2d 1209, 1212 (W.D.Ark. 1998) (internal citations omitted)("Arkansas conflict-of-laws rules would require application of Louisiana law only if the relevant Louisiana law would be characterized as 'substantive,' rather than 'procedural.' If the right to bring a direct action against an insurer would be characterized as 'procedural,' however, then an Arkansas state court would apply Arkansas law and dismiss the action. Thus, the court must determine whether Louisiana' direct action

statute is substantive or procedural under Arkansas law."); *Nelms v. State Farm Mut. Aut. Ins. Co.,* 463 F.2d 1190, 1192 (5th Cir.1972) (emphasis in original) ("A federal district court located in Texas and sitting on the basis of diversity jurisdiction must indeed apply the Louisiana 'substantive' law, but only if that Louisiana law is or would be characterized as 'substantive' *by the state courts of Texas.*").

The North Dakota Supreme Court has not had occasion to characterize any direct action statutes as either substantive or procedural.[3] In light of the conflicting case law and the lack of precedent in the State of North Dakota, the Court will err on the side of caution and characterize Nebraska's direct action statute as substantive so as not to sidestep the choice of law analysis. More recently, the North Dakota Supreme Court did not address the substantive versus procedural dichotomy in its choice of law analysis. As both parties recognize, North Dakota law prescribes that the applicable law (either North Dakota or Nebraska) will be that which has the most significant relationship to the dispute. *Nodak Mut. Ins. Co. v. Wamsley,* 687 N.W.2d 226, 230 (N.D.2004).

### B. *CHOICE OF LAW*

▉ The North Dakota Supreme Court has long abandoned the lex loci delicti (law of the place of the wrong) doctrine in favor of the significant contacts approach in resolving choice of law issues in tort cases. *See Issendorf v. Olson,* 194 N.W.2d 750, 756 (N.D.1972). In an oft-quoted portion of the landmark tort case *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 283 (1963), the court explained the rationale behind the significant contacts test.

Justice, fairness and the best practical result may best be achieved by giving

---

**3.** It should be noted that no state, including Nebraska, has had occasion to characterize

the Nebraska direct action statute as substantive or procedural.

controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation.

*Babcock,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 283 (internal citations and quotations omitted). To supplement the significant contacts test, North Dakota Supreme Court has approved the use of so-called choice-influencing considerations first enunciated in Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267, 282 (1966). The five choice-influencing factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule. *Id.*

As stated by the North Dakota Supreme Court,

With the adoption of the Leflar choice-influencing factors our significant contacts test become something of a hybrid, and effectively became a two-pronged analysis. Initially, we determine all of the relevant contacts which might logically influence the decision of which law to apply. *Issendorf v. Olson,* 194 N.W.2d 750, 755 (N.D.1972); Gregory E. Smith, *Choice of Law in the United States,* 38 Hastings L.J. 1041, 1046–

47 (1987). Then we apply Leflar's five choice-influencing factors to determine which jurisdiction has the more significant interest with the issues in the case. *Issendorf,* 194 N.W.2d 750, 754–55.

*Daley v. Am. States Preferred Ins. Co.,* 587 N.W.2d 159, 162 (N.D.1998). The specific contacts to be considered in tort cases are:

the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, nationality, residence, place of business, or place of incorporation of the parties; and the place where the relationship, if any, between the parties is centered.

*Id.* at 169 n. 3.

**1.) *FIRST PRONG—RELEVANT CONTACTS***

The parties have identified the following contacts: Eggleston, the driver of the semi-tractor, is a resident of Missouri; the semi-tractor was licensed in Kansas and the semi carrier's address was Oklahoma; AmeriServe, the insured, is a Nebraska corporation with its principal place of business in Texas; Continental Casualty Company is a Illinois corporation with its principal place of business in Illinois; the insurance policy between AmeriServe and Continental Casualty Company was applied for, negotiated, entered into and deliver in Texas; the accident occurred in North Dakota; Polensky, the injured driver, is a resident of North Dakota; the injuries were sustained in North Dakota; medical treatment and expenses were incurred in North Dakota; witnesses to the accident are residents of North Dakota; and the negligence and traffic laws of North Dakota will be applied in this case.[4]

4. The Plaintiffs assert that the insurance policy between AmeriServe and Continental Casualty Company was "issued in conformity with Nebraska law." Plaintiffs' Brief in Support of Response to Insurance Company's

Motion to Dismiss, p. 3. However, a plain reading of the policy reveals that it contains no language indicating conformity with Nebraska law. In fact, as previously stated, the

Based on those contacts, the Plaintiffs contend that Nebraska law should apply, whereas the defendant insurance companies contend that North Dakota law should apply.[5] The Court must consider the relevant contacts in light of Leflar's choice-influencing considerations to determine which state has the most significant interest with the issues presented.

### 2.) SECOND PRONG—CHOICE-INFLUENCING FACTORS

As previously stated, the five choice-influencing factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule. Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law*, 41 N.Y.U.L.Rev. 267, 282 (1966). "Although all of the choice-influencing factors should be considered, their relative importance varies with the area of law involved." *Kenna v. So–Fro Fabrics, Inc.*, 18 F.3d 623, 626 (8th Cir. 1994) (citing *Plante v. Columbia Paints*, 494 N.W.2d 140, 141 (N.D.1992)). "In tort actions, the fourth and fifth factors are the most significant." *Id.* (citing *DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694, 697 (Minn.App.1984); *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176, 180–81 (1969); *Hataway v. McKinley*, 830 S.W.2d 53, 58 (Tenn.1992)).

### i. PREDICTABILITY OF RESULTS

A review of relevant case law reveals that predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions. *Apollo Sprinkler Co.,*

*Inc. v. Fire Sprinkler Suppliers & Design*, 382 N.W.2d 386, 390 (N.D.1986) (citing *Restatement (Second) of Conflict of Laws* § 6, comment i (1971)). "Predictability of results plays an important role when parties enter into contracts, but accidents are not planned." *Kenna v. So–Fro Fabrics, Inc.*, 18 F.3d 623, 626 (8th Cir.1994). "Parties do not commit torts in one state rather than another because of that state's tort laws." *Id.* As a result, "[t]he predictability of results is not implicated when an action arises out of an accident." *See Hughes v. Wal–Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir.2001) (citing *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 738 (8th Cir.), cert. denied, 516 U.S. 814, 116 S.Ct. 67, 133 L.Ed.2d 28 (1995); *Schlemmer v. Fireman's Fund Ins. Co.*, 292 Ark. 344, 730 S.W.2d 217, 219 (1987)). The Court finds that this factor does not favor the application of either state's law.

### ii. MAINTENANCE OF INTERSTATE AND INTERNATIONAL ORDER

"Choice-of-law rules should further harmonious relations between states, facilitate commerce between states, and avoid interstate friction." *Nodak Mut. Ins. Co. v. Wamsley*, 687 N.W.2d 226, 233 (N.D.2004) (citing *Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Design*, 382 N.W.2d 386, 390 (N.D.1986)). The Court must consider whether the application of North Dakota law would "manifest disrespect" for Nebraska sovereignty or cause "interstate friction." *Daley v. Am. States Preferred Ins. Co.*, 587 N.W.2d 159, 164–65 (N.D.1998). Neither party suggests that this factor weighs in their favor and the Court so finds. Thus, the Court finds that

---

policy contains the general language prohibiting direct actions.

**5.** Despite the contacts, no party is asserting that the laws of Texas, Oklahoma, Kansas, Illinois, or Missouri should apply.

this factor does not favor the application of either state's law.

### iii. *SIMPLIFICATION OF JUDICIAL TASK*

It will usually be easier for the forum court to apply its own law than any other. *Plante v. Columbia Paints,* 494 N.W.2d 140, 143 (N.D.1992) (citations omitted). However, simplification of judicial tasks is irrelevant if the law of either state could be applied without difficulty. *See Daley v. Am. States Preferred Ins. Co.,* 587 N.W.2d 159, 165 (N.D.1998). Neither Nebraska law, nor North Dakota law poses significant difficulty in terms of its application. The Court finds that this factor does not favor the application of either state's law.

### iv. *ADVANCEMENT OF THE FORUM'S GOVERNMENTAL INTERESTS*

A state's governmental interest in a choice-of-law case is discoverable by (a) identifying the factual contacts which the litigated transaction had with that state, then (b) determining whether those contacts give rise to real reasons (socioeconomic or political justifications) for applying the state's law to litigated issues in the case.

*Daley v. Am. States Preferred Ins. Co.,* 587 N.W.2d 159, 165 (N.D.1998) (quoting Robert A. Leflar, et. al., *American Conflicts Law* § 106, at 295 (4th ed.1986)). The Court must consider North Dakota's governmental interests as well as those interests relative to Nebraska. *See Northwest Airlines, Inc. v. Astraea Aviation Serv. Inc.,* 111 F.3d 1386, 1394 (8th Cir. 1997).

The Plaintiffs state that the Nebraska direct action statute was enacted out of concern for injured parties seeking recourse against bankrupt companies and conclude that "Nebraska, rather than North Dakota, has the most substantial interest in regulating insurance policies is-

sued insuring Nebraska insureds and protecting its citizens against insolvency of insureds." Plaintiff's Brief in Support of Response to Insurance Company's Motion to Dismiss, pp. 5–6.

The only significant contact with Nebraska is that AmeriServe is a Nebraska corporation. Assuming, as suggested by the Plaintiffs, that Nebraska's direct action statute is designed to protect its citizens against insolvent companies, that governmental interest is not well-served in this case. The Plaintiffs are not Nebraska residents, but North Dakota residents. It seems that Nebraska would have little, if any, governmental interest in ensuring that injured non-residents are able to assert a direct action against an out-of-state insurance company arising out of an out-of-state accident between two vehicles licensed out-of-state and driven by non-residents.

North Dakota's contacts with the present dispute are stronger and more numerous. North Dakota has an inherent governmental interest in litigation arising out of an accident occurring within its borders involving injured North Dakota plaintiffs. The Court finds that this factor favors the application of North Dakota law.

### v. *APPLICATION OF THE BETTER RULE*

The final consideration is whether North Dakota or Nebraska has, in an objective sense, the better rule of law. *Daley v. Am. States Preferred Ins. Co.,* 587 N.W.2d 159, 165 (N.D.1998). The North Dakota Supreme Court has recognized that "[s]ometimes different laws are neither better nor worse in an objective way, just different." *Nodak Mut. Ins. Co. v. Wamsley,* 687 N.W.2d 226, 234 (N.D.2004) (quoting *Jepson v. General Cas. Co.,* 513 N.W.2d 467, 473 (Minn.1994)). That situation presents itself here. The Court does

not find that either rule of law is "better" per se. The Court finds that this factor does not favor the application of either state's law.

■ In summary, the Court finds that North Dakota has more significant interest with the present dispute. Whatever interest Nebraska has by virtue of the fact that AmeriServe is incorporated in that state is negligible at best.[6] The inability to bring a direct action against an insurer is well-established in North Dakota jurisprudence and is in keeping with the insurance policy between AmeriServe and Continental Casualty Company.[7]

The Court would also note that application of this rule of law will not unduly burden the Plaintiffs. The action will continue to proceed against defendants AmeriServe Transportation and Randal Eggleston. If a judgment is obtained in favor of the Plaintiffs and against AmeriServe and/or Eggleston, Continental Casualty

Company will be contractually and legally obligated to provide coverage for the claim. The Plaintiffs will have no less opportunity to receive compensation for their injuries by prohibiting a direct action against Continental Casualty Company in the first instance. Having concluded that North Dakota law applies, the Plaintiffs are unable to maintain a direct action against the defendant insurance companies and the claims against the insurance companies is dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[8]

### III. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss is **GRANTED**. (Docket No. 22). As a result, the Plaintiffs' claims against Continental Casualty Corporation, CNA Companies, and Continental Insurance Company are dismissed. The claims asserted against AmeriServe Transportation, Inc. and Randal Eggleston survive and shall proceed to

---

**6.** Nebraska would have no greater interest in this dispute if the Court were to consider it a contract claim rather than a tort action.

**7.** The Plaintiffs contend that the following provision creates an ambiguity in the insurance policy regarding the assertion of direct action claims:

> **BANKRUPTCY**
> Bankruptcy or insolvency of the "insured or the insured's" estate will not relieve [Continental Casualty Company] of any obligations under the Coverage Form.

Defendants' Ex. A. To refresh, the insurance policy contains the following provision regarding direct actions:

> **LEGAL ACTION AGAINST US**
> No one may bring a legal action against us under the Coverage Form until:
> a. There has been full compliance with all the terms of this Coverage Form; and
> b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the

right under this policy to bring us into an action to determine the "insured's" liability.

*Id.*

Based on a plain reading of the two provisions, there is no ambiguity regarding the permissibility of direct actions; they are prohibited. Standing together, the provisions provide that AmeriServe is not relieved of any obligations under the insurance policy by filing bankruptcy, but any obligation on behalf of Continental Casualty Company does not arise until a final determination by a trial on the merits. Stated differently, in order to attain a judgment against Continental Casualty Company a plaintiff must first secure a judgment as to AmeriServe. The fact that AmeriServe may be bankrupt or insolvent does not change that in any way, nor does it affect Continental Casualty Company's potential post-judgment obligation. The two provisions may coexist and do not create an ambiguity that must be resolved by the Court or by a jury.

**8.** The Plaintiffs' remaining issues regarding consent, waiver, and unjust enrichment are

trial.[9]

**IT IS SO ORDERED.**

without merit and need not be discussed.

9. A review of the file reveals that there are now two separate and identical lawsuits in federal court initiated by the same Plaintiffs against the defendants, AmeriServe Transportation and Randal Eggleston. *See* Case No's. A1–05–040 and A1–05–051. The parties are ordered to take steps to clear up the docket and dismiss one of the actions.